86 P.3d 963

**STATE of Arizona, Appellee,**

v.

**Michael Anthony RIVERA, Appellant.**

**No. 1 CA–CR 02–0211.**

Court of Appeals of Arizona, Division 1, Department E.

April 1, 2004.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Diane M. Ramsey, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Garrett W. Simpson, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

SNOW, Judge.

¶ 1 Michael Anthony Rivera appeals his convictions and sentences on one count of first-degree murder, one count of first-degree burglary, and one count of kidnapping. We conclude that the trial court erred when it allowed two accomplice witnesses to testify who had entered plea agreements containing consistency provisions when the witnesses had not been informed that the consistency provisions were unenforceable and that they would receive the benefit of their plea agree-

ments as long as their testimony was truthful. We reverse and remand on that basis.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In April 1998, Michael Rivera, Marcario Vela, Victoria Valenzuela, and Katherine Saiz were charged with murdering Megan Ramirez. During the police department's investigation of the murder, Valenzuela and Saiz each offered police several different versions of the events leading to Ramirez's murder, including one given during a videotaped "free talk" on August 10, 1998. Prior to Rivera's trial, Valenzuela and Saiz independently agreed with the State to plead guilty to second-degree murder. In exchange for the plea offers, each woman specified that the information she had provided in her "free talk" was full, accurate and truthful and also agreed to testify at Rivera's trial consistently therewith.

¶ 3 Prior to his trial for first-degree murder, Rivera moved to preclude the testimony of Valenzuela and Saiz, arguing that both plea agreements required the witness to testify consistently with the version of events given in their "free talks" and thus, according to *State v. Fisher*, 176 Ariz. 69, 859 P.2d 179 (1993), contained unenforceable consistency provisions. Rivera argued that admitting testimony procured by such agreements would violate his right to a fair trial. The trial court summarily denied Rivera's motion.

¶ 4 At trial, Saiz and Valenzuela both testified. Valenzuela testified that the victim, Megan Ramirez, was dating Rivera, who was a member of the "West Side Chicanos" street gang. Valenzuela further testified that on the night of Ramirez's murder, Ramirez danced with a member of the "Wedgewood" street gang at a local bar. According to Valenzuela, the Wedgewood gang is a rival gang to the West Side Chicanos and was also perceived to be responsible for the death of Jesse Moreno, who was Saiz's boyfriend, Rivera's friend, and also a West Side Chicano gang member.

¶ 5 After Ramirez went home that evening, Rivera, Vela and Valenzuela went to Ramirez's home. They obtained entry through an unlocked window and forced her to accompany them in Valenzuela's car. Together with Katherine Saiz, they then drove Ramirez to a field. Valenzuela and Saiz both testified that after Rivera shot Ramirez twice, he directed each of them to shoot her as well. They testified that they did so to preserve respect for Moreno's memory, the West Side Chicano street gang, and the esteem with which Rivera was held within the gang. Ramirez's body was found the next day.

¶ 6 On cross-examination, Valenzuela and Saiz admitted that they each told police multiple versions of the events surrounding Ramirez's murder prior to their August 10, 1998 videotaped interview. Each also admitted that she signed the plea agreement and that she understood that any variation in her testimony from the version given in her August 10 interview would cause her to lose the benefit of her plea agreement. Although Saiz and Valenzuela both testified that they shot Ramirez at Rivera's direction, their separate accounts vary in other respects.

¶ 7 At the conclusion of the trial, the jury found Rivera guilty of first-degree murder, first-degree burglary and kidnapping. The trial court sentenced Rivera to "natural life, not to be released on any basis" on the first-degree murder charge. The court further sentenced Rivera to twenty-four years in prison on both the burglary charge and the kidnapping charge and ordered that all three sentences be served consecutively. Rivera timely appealed, and we have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9 and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003), 13–4031 (2001) and 13–4033 (2001).

## ANALYSIS

¶ 8 On appeal, Rivera argues that the testimony of Valenzuela and Saiz, procured through an illegal consistency agreement, deprived him of a fair trial and accordingly, he is entitled to a new trial. *See State v. Fisher*, 176 Ariz. 69, 859 P.2d 179 (1993). He further argues that because the State acted outside the law in obtaining the testimony of Valenzuela and Saiz, their testimony must be sup-

pressed at the new trial.[1] *See* A.R.S. § 13–2802(A)(1) (2001) ("A person commits influencing a witness if such person threatens a witness or offers, confers or agrees to confer any benefit upon a witness in any official proceeding or a person he believes may be called as a witness with intent to ... [i]nfluence the testimony of that person"); *Mapp v. Ohio*, 367 U.S. 643, 659, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (excluding evidence obtained as the result of an illegal search because "[n]othing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence."); *see also United States v. Peltier*, 422 U.S. 531, 542, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975) (discussing proper application of exclusionary rule); *United States v. Russell*, 411 U.S. 423, 430, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) (same).

¶ 9 We agree that Rivera is entitled to a new trial. We further agree that any tainted testimony or statements made by Valenzuela and Saiz after they entered their plea agreements cannot be used by the prosecution to establish Rivera's guilt. We disagree, however, that Valenzuela and Saiz will necessarily be precluded from testifying at Rivera's retrial if appropriate action is taken to clear their testimony of the taint caused by the consistency provisions in their respective plea agreements.

## A. The Accomplice Witnesses' Plea Agreements Contained Consistency Provisions.

■ ¶ 10 Rivera relies on *Fisher* for his argument that the testimony of Valenzuela and Saiz tainted his trial. In *Fisher*, the defendant and his wife, Ann, were charged with the murder of the owner of an apartment complex they managed. 176 Ariz. at 71, 859 P.2d at 181. Prior to her husband's trial, Ann Fisher entered an agreement with the State in which she agreed to plead guilty to a reduced charge in exchange for her testimony against her husband. *Id.* The agreement was expressly conditioned on her promise that if required to testify at trial,

her testimony "w[ould] not vary substantially in relevant areas to statements previously given investigative officers." *Id.*

¶ 11 At trial, Mrs. Fisher invoked her Fifth Amendment right and did not testify. *Id.* Her agreement with the State was then admitted into evidence and her husband was found guilty of first-degree murder and subsequently sentenced to death. *Id.* After her sentencing on a lesser crime pursuant to her plea agreement, Ann Fisher contacted her husband's lawyer and told him that she, not her husband, had killed the victim. *Id.* at 72, 859 P.2d at 182. Based upon that confession, her husband's lawyer filed a motion for new trial. *Id.*

¶ 12 At a hearing on this motion, Ann Fisher denied committing the murder but did testify that she had made "conflicting statements ... to various people" suggesting that she had. *Id.* She further testified that, had she been unconstrained by her plea agreement, she would have testified as to "how it was," and that her husband was "staggering drunk" on the day of the murder. *Id.* Based on this evidence, the superior court granted a new trial. *Id.*

¶ 13 When the State sought review, the Arizona Supreme Court affirmed the superior court's order granting a new trial. It held, as it had earlier suggested on direct appeal, *see State v. Fisher*, 141 Ariz. 227, 244, 686 P.2d 750, 767 (1984), that consistency provisions in plea agreements were unfair and unenforceable. *Fisher*, 176 Ariz. at 73, 859 P.2d at 183. The court acknowledged that plea agreements could "properly be conditioned upon truthful and complete testimony." *Id.* However, "[t]he prosecution should have bargained with [Mrs. Fisher] only for truthful and accurate testimony." *Id.* at 74, 859 P.2d at 184 (stating that "[s]uch an agreement maintains the integrity of the plea agreement process and promotes a fair trial without encouraging unreliable testimony"). Instead, it had required that Ann Fisher's testimony be consistent with earlier versions

---

1. Rivera also argues that A.R.S. § 13–1101(1) (2001) (defining "premeditation") is unconstitutionally vague as applied to his case. In light of our decision to vacate the convictions and re-mand for retrial, however, as well as the Arizona Supreme Court's opinion in *State v. Thompson*, 204 Ariz. 471, 65 P.3d 420 (2003), we need not address this argument.

given to authorities. *Id.* at 73, 859 P.2d at 183.

¶ 14 The court explained that the problem with accepting testimony at trial from someone whose plea agreement contains a consistency provision is that when "the prosecution's case depends substantially upon accomplice testimony and the accomplice witness is placed, either by the prosecution or the court, under a strong compulsion to testify in a particular fashion," *id.* at 73, 859 P.2d at 183 (quoting *People v. Medina,* 41 Cal.App.3d 438, 116 Cal.Rptr. 133, 145 (1974)), undue pressure is placed "on witnesses to stick with one version of the facts regardless of its truthfulness." *Id.* at 74, 859 P.2d at 184. This inherent pressure "frustrate[s] the jury's duty to determine the credibility of the witness," and thus deprives the defendant of a fair trial. *Id.* Our supreme court has twice reaffirmed its holding in *Fisher* while making clear that in cases where a defendant believes that a witness entered a consistency agreement, an objection to the potentially tainted testimony must be made at trial. *See State v. Cook,* 170 Ariz. 40, 59, 821 P.2d 731, 750 (1991) ("We adhere ... to our view of the ethical problems inherent in contingent plea agreements that we elaborated in *Fisher.*"); *see also State v. Kayer,* 194 Ariz. 423, 430–31, ¶ 20, 984 P.2d 31, 38–39 (1999) (stating that defense counsel must object to testimony at trial for reviewing court to appropriately "assess whether the agreement runs afoul of our holding in *Fisher* as well as our subsequent analysis and holding in *Cook.*").

¶ 15 In the present case, as in *Fisher,* the plea agreements signed by the accomplice witnesses required Valenzuela and Saiz to give trial testimony consistent with an earlier recitation of events they had made to investigators.[2] The State acknowledges that neither Valenzuela nor Saiz would have been free to testify at trial to a version of events different than the one given in her August 10 "free talk" without losing the benefit of her plea agreement. *See* Answering Brief at 11 ("The witness could not deviate from her pre-agreement videotaped statement as both were conditioned on being truthful."). In addition, both Valenzuela and Saiz testified at trial that they thought they had to testify in accord with their August 10 "free talk" to comply with their plea agreements.

¶ 16 The State nonetheless makes three arguments for affirming the conviction. First, the State contends that Rivera does not have standing to assert the rights of the accomplice witnesses not to have their consistency provision enforced. Second, the State argues that when an accomplice witness avers in a plea agreement that a particular version of facts is true, it is not error for a trial court to allow the witness to testify to that version of events at trial. Third, the State argues that if there was any error in allowing the testimony here, it was harmless to Rivera. We reject each of these arguments.

## 1. Rivera Has Standing to Challenge the Consistency Provisions.

¶ 17 First, the State argues that the prohibition on the enforcement of consistency provisions protects only Valenzuela and

2. The relevant clauses in the plea agreements Valenzuela and Saiz entered are identical, and provide that:

> 2.... Defendant shall testify fully, accurately and truthfully in any trial, re-trial, or defense interview regarding co-defendants Michael Rivera CR 98–05850 and Macario Vela CR 98–05242 as to the facts arising out of and about said cases, based upon defendant [Saiz's/Valenzuela's] knowledge as an eyewitness thereto.
> ....
> 5.... Defendant [Saiz/Valenzuela] avows that all of the facts stated by her regarding this case are fully, accurately and truthfully stated in the video-taped interview conducted on August 10,

1998, and defendant acknowledges that this plea is made by the State on the basis of this avowal, and defendant [Saiz's/Valenzuela's] stipulation in Paragraph 2 above.

The plain reading of these provisions is that Saiz and Valenzuela would plead guilty to second-degree murder and get reduced sentences if they promised, per section 2, to tell the "truth" about what had happened on the night of the murder. According to section 5, the truth to which they would testify is what they had reported in their taped interviews of August 10. When the two sections are read together, they require the witnesses to testify at trial in a manner "consistent" with their statements of August 10, 1998.

Saiz, and that Rivera has no standing to protest the existence of the consistency provisions contained in their plea agreements. We reject this argument. The principal reason consistency provisions are unenforceable is because of their potential to deprive a defendant of a fair trial by providing an accomplice witness with too much incentive to offer scripted testimony against the defendant or to suppress evidence in the defendant's favor. Because it is Rivera's right to a fair trial that is at issue, Rivera has standing to challenge witness testimony that he claims is tainted. *See, e.g., State ex rel. Romley v. Superior Court,* 181 Ariz. 378, 381, 891 P.2d 246, 249 (App.1995) (finding standing when "defendants have alleged a possible harm to their own cases that could potentially affect their own due process rights to a fair trial"); *see also State v. Filipov,* 118 Ariz. 319, 326, 576 P.2d 507, 514 (App.1977) (finding standing when defendant's due process claim involved challenge to legality of co-defendant's sentence reduction).

### 2. The Plea Agreement's Language Requiring Truthful Testimony at Trial Does Not Make this Case Distinguishable from *Fisher.*

¶ 18 In *People v. Jones,* 236 Mich.App. 396, 600 N.W.2d 652, 656–58 (1999), the Michigan Court of Appeals held that so long as an agreement with an accomplice witness provides that a witness will testify truthfully, there is no basis for a defendant to seek a new trial merely because the agreement requires the witness to testify to a specified version of events at trial. This is particularly so, *Jones* holds, when the court has ensured:

> (1) full disclosure of the terms of the agreements struck with such witnesses, (2) the opportunity for full cross-examination of such witnesses regarding the agreements and their effect, and (3) instructions cautioning the jury to carefully evaluate the credibility of witnesses who have been induced by agreements with the prosecution to testify against the defendant.

*Id.* at 656 (citations omitted). In such cases, according to *Jones,* the consistency terms of an agreement are relevant only in evalua-

tions of the witness's credibility, and not to the admissibility of the witness's testimony. *Id. Jones* recognizes that the rule it adopts is inconsistent with the Arizona rule adopted in *Fisher,* but *Jones* distinguishes *Fisher* because in *Jones,* in addition to requiring specific testimony, the immunity agreement at issue "also expressly conditioned ... immunity on the witnesses providing *truthful* testimony." *Id.* at 656–57.

¶ 19 The State notes that here, similar to *Jones,* Valenzuela and Saiz agreed to testify truthfully in addition to endorsing a particular version of their pretrial statements to police as the truth. The State argues that such an avowal, coupled with the fact that both Valenzuela and Saiz were cross-examined at trial about their plea agreements, including the consistency clause, enables the jury to be in a position to fairly evaluate the truthfulness of their testimony.

■ ¶ 20 We do not agree that such a distinction meaningfully addresses the concerns that gave rise to the law expressed in *Fisher. Fisher* is designed to preserve the role of a trial as the crucible by which a jury evaluates the truthfulness of testimony. *See* 176 Ariz. at 74, 859 P.2d at 184. Thus, *Fisher* prohibits the State from "pre-scripting" testimony by conditioning a witness's plea agreement on her rendition of a particular version of events. *Id.* Even if the witness avers in her plea agreement that the specified version of events is true and that the witness will so testify at trial, that avowal is made when the witness is not subject to the testing and confrontation her testimony would receive at trial. Once having entered the agreement, however, the witness is compelled by the desire to preserve her plea agreement to hold to the specified version of events at trial regardless of its truth.

¶ 21 A consistency provision also inhibits the effectiveness of cross-examination as a truth-seeking tool. The fact that a witness can be asked about her understanding of the consistency provision in her plea agreement in no way changes the incentive that the provision itself creates for the witness to repeatedly give the required testimony. The incentive to render and repeat the specified testimony and insist upon its truthfulness

exists regardless of the testimony's accuracy. As a result, the effectiveness of cross-examination as a trial tool for testing the veracity of a witness's testimony is limited by consistency provisions.

¶ 22 The State argues that the *Fisher* rule leaves a prosecutor without an effective remedy should an accomplice witness change her version of events at trial from the version of events upon which the State offered to make her a plea in exchange for testimony. We disagree. The recourse the State has in such a circumstance is to impeach the witness with her previous statements. It would then be the jury's duty to determine which version of the witness's account to credit, if any. Of course, by changing her testimony from that of a previous version, the accomplice witness would put at issue whether she had testified truthfully at trial, and thus whether she had complied with the terms of her plea agreement and was entitled to receive the benefit of that plea agreement.

¶ 23 We decline to find that facts like those presented here justify a departure from our law set forth by the supreme court in *Fisher*, even when other states might follow a different course.[3]

### 3. Rivera Was Harmed by the Testimony of Valenzuela and Saiz.

¶ 24 The State and the dissent argue that to justify reversal of a conviction, *Fisher* requires a defendant show both that an accomplice witness's testimony was tainted by a consistency provision and that there is newly-discovered evidence that might affect the verdict. In our opinion, this is a misinterpretation of *Fisher*. *Fisher* does not require an independent basis to doubt a jury's verdict when witnesses important to the State's case have offered testimony that is tainted by a consistency provision.

¶ 25 The State argues that Rivera is unable to show he was prejudiced by the testimony of Valenzuela and Saiz. It argues that,

unlike *Fisher*, in which there was evidence that Ann Fisher perjured herself at trial, there is no such evidence here. Contrary to the State's representation, however, Ann Fisher offered no testimony at the trial of her husband, and thus there was no tainted trial testimony that would present a due process problem. *Fisher*, 176 Ariz. at 74, 859 P.2d at 184.

¶ 26 The court in *Fisher* also pointed out, however, that Ann Fisher's desire to comply with her consistency provision resulted in her apparent suppression of evidence that might have exonerated her husband or mitigated his culpability or punishment. "Arguably, however, [Ann Fisher] was prevented from supplying evidence helpful to the defendant by reason of the improper consistency provision." *Id.* Thus, even though the trial itself presented no due process problems, the supreme court had "no hesitation in holding that the provision is unenforceable." *Id.* It was only after observing that the defendant had presented sufficient newly-discovered evidence, previously withheld by his wife due to her consistency provision, that the supreme court upheld the trial court's grant of a new trial. *Id.* at 75, 859 P.2d at 186.

¶ 27 In paragraph 37 *infra*, the dissent quotes *Fisher* for the proposition that a new trial can only be granted in cases when there is newly-discovered material evidence. This quotation comes from *Fisher's* discussion affirming the trial court's grant of a new trial. In *Fisher*, the supreme court never had to directly consider the question of the propriety of a conviction obtained through the testimony of an accomplice witness tainted by a consistency clause. "In most cases reaching a constitutional due process issue, the [S]tate has obtained a conviction through use of testimony that was tainted by an improper consistency provision. In this case, the person entering into the improper agreement

---

**3.** *Jones* relies heavily on the similar reasoning and rule of a Nevada Supreme Court case, *Sheriff, Humboldt County v. Acuna*, 107 Nev. 664, 819 P.2d 197 (1991). *See Jones*, 600 N.W.2d at 657. However, we note that *Acuna* was known to our supreme court when it decided *Fisher*. *See Fisher*, 176 Ariz. at 73 n. 1, 859 P.2d at 184 n. 1. The

court read *Acuna* for the proposition that "due process prohibits a plea agreement from conditioning leniency upon anything other than truthful and complete testimony." *Id.* at 73, 859 P.2d at 184. Had our supreme court desired to adopt the approach represented by *Jones* and *Acuna*, it would have done so in *Fisher*.

did not testify." *Fisher*, 176 Ariz. at 74, 859 P.2d at 184.

¶ 28 Unlike *Fisher*, however, that question is directly presented here. The accomplice witnesses in this case actually did testify at trial. In addition, the trial court took no steps to ensure that Valenzuela and Saiz were aware prior to testifying that the consistency provisions in their plea agreements were not enforceable. Rather, the trial court summarily denied Rivera's motion to preclude the testimony of Valenzuela and Saiz because of the consistency provisions. Both Valenzuela and Saiz confirmed in their trial testimony that they thought they had to testify in accord with their August 10 "free talk" to comply with their agreement. Neither the trial court nor either of the parties disabused them of this notion. In effect then, contrary to the requirements of *Fisher*, the trial court enforced the consistency provisions of the plea agreement by allowing Valenzuela and Saiz to testify under the incorrect belief that they were bound by those provisions.

¶ 29 If, as the dissent suggests, we require a defendant to establish newly-discovered evidence in addition to showing that the conviction was obtained through tainted testimony, we would place an almost impossible burden upon the defendant. An accomplice witness, after entering a consistency agreement and benefitting from it, would have no motive to disclose any deficiency in her testimony. This is quite forcefully demonstrated by the facts of *Fisher*, where even though the accomplice witness was the defendant's wife, she nevertheless concealed important facts which may have helped her husband until after his conviction. 176 Ariz. at 75, 859 P.2d at 185. The accomplice witnesses in Rivera's case were the only eyewitnesses to the crime to testify at trial. If their testimony is tainted and there is no reason for them to correct it, there may be no other source through which Rivera might show that the witnesses' testimony is questionable.[4]

¶ 30 Here, the State concedes that the testimony of Saiz and Valenzuela was "key" to its case. Thus, we cannot say that their testimony did not affect the outcome of the trial or otherwise prejudice Rivera. *See State v. Green*, 200 Ariz. 496, 501, ¶ 21, 29 P.3d 271, 276 (2001) ("Error is harmless only if we can say, beyond a reasonable doubt, that it 'did not contribute to or affect the verdict.' " (citation omitted)). No independent evidence is necessary to reverse a conviction when the State's case substantially depends on the testimony of accomplice witnesses who have entered consistency provisions and who testify without the court taking appropriate steps to clear their testimony of the taint caused by the provision. As the *Fisher* court noted:

> We have a duty to ensure and protect the fairness and integrity of the judicial system. Our refusal to enforce consistency provisions enhances the reliability of testimony given pursuant to plea agreements, helps ensure the fairness of the trial and plea bargaining processes, and maintains the integrity of the judicial system.

176 Ariz. at 74, 859 P.2d at 184.

### B. The Accomplice Witnesses May Testify at Retrial if the Taint Is Removed from Their Plea Agreements; Their Previous Tainted Testimony May Not Be Introduced.

¶ 31 Rivera argues that on remand we should suppress the testimony of Valenzuela and Saiz so as to deter prosecutors from seeking to create invalid consistency agreements in the future. To justify this request, Rivera cites cases from the United States Supreme Court's exclusionary rulings pertaining to Fourth Amendment violations. *See Mapp*, 367 U.S. at 659, 81 S.Ct. 1684; *see also Russell*, 411 U.S. at 430, 93 S.Ct. 1637. We do not find these cases persuasive in light of the direction in *Fisher*.

¶ 32 *Fisher* itself balances the need to deter prosecutors from creating consistency provisions with the need to admit all relevant

---

4. *Kayer* and *Cook* do not support the dissent's view that Rivera must show an independent reason to question the verdict in addition to the tainted testimony. While reaffirming *Fisher*, the supreme court noted in both cases that the defendant had not objected at trial to the consistency agreements and thus had not provided either a chance for the trial court to cure the problem or a record on which the question could be effectively reviewed on appeal.

evidence at trial. 176 Ariz. at 76, 859 P.2d at 186. It does so by refusing to enforce consistency provisions rather than by suppressing the testimony of eyewitnesses. *Id.* In affirming the trial court's ruling granting a new trial, *Fisher* nonetheless vacated the trial court's determination that Ann Fisher's statements resulting from the consistency provisions of her plea agreement could not be used at retrial. *Id.* It first noted that such a remedy was "fashioned in cases where the person with an improper consistency agreement has testified.... Here, the improper clause has produced no tainted testimony; there is, therefore, no tainted testimony to be excluded." *Id.* Then noting the basic principle that "all the relevant and admissible evidence should be presented at the new trial," the supreme court declined to preclude her testimony at the retrial if the taint caused by the consistency provision were removed. *Id.* The taint could be removed by "not enforcing the offending clause, by making full disclosure of the terms and circumstances of the agreement, by granting an opportunity to fully cross-examine, and by giving proper instructions to the jury." *Id.* (citing *State v. Nerison*, 136 Wis.2d 37, 401 N.W.2d 1, 4–5 (1987)).

¶ 33 Here, however, both Valenzuela and Saiz did testify at Rivera's previous trial. According to *Fisher*, the appropriate remedy is to exclude the tainted testimony. *See* 176 Ariz. at 76, 859 P.2d at 186. We therefore hold that, at Rivera's retrial, the State cannot introduce the testimony of Valenzuela or Saiz from the previous trial to establish Rivera's guilt. Additionally, to establish Rivera's guilt the State cannot introduce any statements made by Valenzuela or Saiz after they entered their plea agreements and before any taint caused by the consistency provisions in their plea agreements has been removed.

¶ 34 While this case differs from *Fisher* in that both Saiz and Valenzuela did testify under the taint of the improper consistency agreements at trial, we similarly find no reason to preclude the testimony of Valenzuela and Saiz during the new trial if the court takes appropriate steps to remove the taint of the improper provisions. As the facts of this case demonstrate, the accomplice witness herself must be informed that the consistency provision is unenforceable prior to her testimony. If she is not so informed, and thus testifies under the belief that the clause is valid, her testimony will still be tainted by the consistency provision. To "not enforc[e] the offending clause" and to make "full disclosure of the terms and circumstances of the agreement," a trial court is obliged by *Fisher* to ensure that the witness, any counsel she may have, the parties to the underlying prosecution, and, in appropriate cases, the jury in the underlying prosecution, are aware that any consistency provision in a plea agreement entered by an accomplice witness cannot be enforced. *Id.* at 76, 859 P.2d at 186. The State may only condition plea agreements on the completeness and truthfulness of any proffered testimony.[5] This course of action removes any motivation for the accomplice witness to provide particular testimony and will appropriately protect Rivera's rights while also allowing the State to fairly re-prosecute its charges against Rivera.

## CONCLUSION

¶ 35 For the reasons stated above, the trial court erred by denying Rivera's motion to preclude Saiz's and Valenzuela's testimony without taking appropriate steps to cure the error inherent in the consistency provisions in Saiz's and Valenzuela's plea agreements. We reverse Rivera's convictions and sentences and remand to the trial court for further proceedings consistent with this opinion.

CONCURRING: JOHN C. GEMMILL, Judge.

THOMPSON, Judge, dissenting.

¶ 36 Although there is no showing here that the testimony of Valenzuela and Saiz was false, or that they suppressed potentially

---

5. Here Valenzuela and Saiz agreed to testify in "any trial, re-trial, or defense interview" of either Rivera or Vela. The requirement in the plea agreement that the accomplice witnesses testify at a retrial if necessary is enforceable.

exculpatory information in order to maintain their rights under their plea agreements, and no trial court finding of such, the majority finds a violation of due process based solely on the State's use of consistency agreements, and reverses a first-degree murder conviction. In this, the majority errs in its application of the supreme court's decisions in *State v. Fisher*, 176 Ariz. 69, 859 P.2d 179 (1993), *State v. Cook*, 170 Ariz. 40, 821 P.2d 731 (1991), and *State v. Kayer*, 194 Ariz. 423, 984 P.2d 31 (1999). Because Rivera failed to establish, as *Fisher* required, that Valenzuela and Saiz would have exculpated him were they not constrained by their plea agreements, I can find no due process violation. Accordingly, I dissent.

¶ 37 In *Fisher*, the supreme court held that, to obtain relief, the defendant had to show more than the mere use by the State of a consistency agreement with its witness:

Although [we are] satisfied that the consistency provision is improper .... [t]o warrant relief, defendant must show ... [*inter alia*] that if the new evidence were introduced, it would probably change the verdict if a new trial were ordered....

176 Ariz. at 75, 859 P.2d at 185. Because the trial court on remand had found that Ann's evidence was exculpatory and unavailable at trial *because of her plea agreement*, and the supreme court applies a deferential standard to such trial court findings, the court in *Fisher* determined that the factors necessary to afford relief had been established. *Id.* at 72, 75, 859 P.2d at 182, 185. It was only after Fisher established, and the trial court found, that the State's consistency agreement with Fisher's wife resulted in the presentation of false evidence at his trial or the suppression of materially exculpatory infor-

mation that a new trial was required. *Id.*[6] Conversely, the majority here does not even contend that there is such evidence to be presented at retrial. Valenzuela and Saiz were impeached at trial with their prior statements and the constraints imposed by the plea agreements were known to the jury, which by implication determined that these witnesses testified as they did because they were telling the truth, and not because their plea agreements caused them to testify falsely.

¶ 38 The analytical framework of the *Fisher* opinions was applied by the supreme court in *Cook* and *Kayer*. In each case, the court held that the record before it, which, as here, indicated that a trial witness had testified under an agreement requiring truthful testimony that was consistent with a previous statement, was inadequate to determine whether the defendant had been denied a fair trial due to the use of testimony constrained by the consistency agreement. *Cook*, 170 Ariz. at 58, 821 P.2d at 749; *Kayer*, 194 Ariz. at 430, 984 P.2d at 38. The record here, similarly, shows only that Valenzuela and Saiz testified pursuant to consistency agreements; it does not suggest that the witnesses would have testified otherwise, and favorably to Rivera, were they not so constrained.

¶ 39 Because this record does not indicate that Rivera was denied a fair trial, I would affirm.

---

**6.** By contrast, in Fisher's original appeal, the supreme court, though disapproving of the consistency agreement because of its coercive effect, affirmed his conviction and death sentence because there had been no showing, and no trial court finding, that the unavailability of Ann's exculpatory evidence had in fact been effectuated by the "threat associated with ... the plea agreement." *Fisher*, 141 Ariz. at 244, 686 P.2d at 767.