SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No.  CR-04-0170-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| | ) | Division One |
| v. | ) | No.  1 CA-CR 02-0211 |
| | ) | |
| | ) | Maricopa County |
| MICHAEL ANTHONY RIVERA, | ) | Superior Court |
| | ) | No.  CR 98-005850 |
| Appellant. | ) | |
| _____ | ) | **O P I N I O N** |

Appeal from the Superior Court in Maricopa County
The Honorable Thomas Dunevant, III, Judge

**AFFIRMED**
_____

Opinion of the Court of Appeals, Division One
207 Ariz. 383, 86 P.3d 963 (App. 2004)

**VACATED**
_____


TERRY GODDARD, ARIZONA ATTORNEY GENERAL                    Phoenix
     by   Randall M. Howe, Chief Counsel
          Criminal Appeals Section
Attorney for Appellee

JAMES J. HAAS, MARICOPA COUNTY PUBLIC DEFENDER             Phoenix
     by   Garrett W. Simpson, Deputy Public Defender
Attorney for Appellant

ANDREW P. THOMAS, MARICOPA COUNTY ATTORNEY                 Phoenix
Richard M. Romley, Former Maricopa County Attorney
     by   Diane Gunnels Rowley, Deputy County Attorney
Attorney for Amicus Curiae
Arizona Prosecuting Attorneys' Advisory Council

**B E R C H**, Justice

¶1        We granted review to determine whether a plea agreement containing terms that require truthful testimony and an avowal that prior statements by the pleading defendant were true constitutes a "consistency agreement," prohibited by our decision in *State v. Fisher*, 176 Ariz. 69, 859 P.2d 179 (1993) (*Fisher III*).  We hold that it does not.  We have jurisdiction in this case pursuant to Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12-120.24 (2003).

## I.   FACTS AND PROCEDURAL BACKGROUND

¶2        In 1998, Michael Rivera, Marcario Vela, Victoria Valenzuela, and Katherine Saiz were charged with murdering Megan Ramirez.  In separate plea agreements with the State, Victoria Valenzuela and Katherine Saiz independently agreed to plead guilty to second degree murder.  In the agreements, each woman avowed that the information she had provided in a "free talk" with the State on August 10, 1998, was a complete, accurate, and truthful account of the events surrounding the murder.  The witnesses understood that the State had entered into the plea agreements based on that avowal, and each witness promised that she would testify truthfully at Rivera's trial.  The plea agreements each provided, in relevant part, as follows:

2.  . . . Defendant [Valenzuela/Saiz] shall testify fully, accurately, and truthfully in any trial, re-trial, or defense interview regarding co-defendants Michael Rivera, CR 98-05850[,] and Marcario Vela, CR 98-05242, as to the facts arising out of and about said cases, based upon defendant [Valenzuela's/Saiz's] knowledge as an eye-witness thereto.

. . . .

5.  . . . Defendant [Valenzuela/Saiz] avows that all of the facts stated by her regarding this case are fully, accurately and truthfully stated in the video-taped interview conducted on August 10, 1998, and defendant acknowledges that this plea is made by the State on the basis of this avowal, and defendant [Valenzuela's/Saiz's] stipulation in Paragraph 2 above.

¶3      Rivera sought to preclude Valenzuela and Saiz from testifying at his trial, arguing that their plea agreements contained consistency provisions, which are prohibited by this court's decision in *Fisher III*, 176 Ariz. at 74, 859 P.2d at 184. Rivera claimed that because the witnesses had committed to testify to a settled version of the facts, allowing them to testify would violate his right to a fair trial. The trial court denied the motion.

¶4      At trial, Valenzuela and Saiz testified that the victim, Megan Ramirez, was dating Rivera, who was a member of the West Side Chicanos gang. The night of the murder, Megan was seen dancing with a former member of a rival gang that was thought to be responsible for killing a member of Rivera's gang. After the victim went home, Rivera, Vela, and Valenzuela broke

in and forced her into their car. They picked up Saiz and then drove to a field. Valenzuela and Saiz testified that Rivera shot the victim twice, and then ordered each of them to shoot her as well. Megan's body was found the next day.

¶5 At trial, Valenzuela and Saiz admitted to having given several differing versions of the events surrounding the murder before making their August 10th videotaped statements. Each witness also testified that she understood that any significant variation from the statements in the August 10th "free talk" might cause her to lose the benefit of her plea agreement. Each also testified, however, that she understood that the plea agreement required her to testify truthfully, and that she had done so.

¶6 Both the prosecutor and defense counsel addressed the plea agreements several times during the trial — during voir dire, testimony of the witnesses, and closing arguments. The judge also instructed the jurors on the significance of plea agreements before they retired to deliberate.

¶7 The jury convicted Rivera of first degree murder, first degree burglary, and kidnapping. He was sentenced to natural life for the murder and to consecutive sentences for the burglary and kidnapping. Rivera appealed, contending that the accomplice witnesses' plea agreements contained illegal consistency clauses that deprived him of a fair trial.

- 4 -

¶8 The court of appeals, in a split decision, agreed with Rivera. *State v. Rivera*, 207 Ariz. 383, 391, ¶ 35, 86 P.3d 963, 971 (App. 2004). The majority found that in this case, as in *Fisher III*, the plea agreements required the witnesses to testify at trial consistently with an earlier recitation of events. *Id.* at 387, ¶ 15, 86 P.3d at 967. The majority also found that, because the accomplice witnesses' testimony was important to the State's case, the plea agreement terms may have affected the outcome of the trial. *Id.* at 390, ¶ 30, 86 P.3d at 970. The court therefore remanded for a new trial. *Id.* at 391, ¶ 35, 86 P.3d at 971. The court ordered that at Rivera's retrial the State could not introduce Valenzuela's and Saiz's testimony from the previous trial or any other statements they made after they had entered their plea agreements. *Id.* at ¶ 33. The majority concluded, however, that Valenzuela and Saiz could testify at the retrial if the trial court removed the taint caused by the improper plea agreement provisions by informing the witnesses, before they testified, that the consistency provisions were unenforceable. *Id.* at ¶ 34.

¶9 Judge Thompson dissented. *Id.* at 391-92, ¶ 36, 86 P.3d at 971-72 (Thompson, J., dissenting). He believed that the majority erred in applying *Fisher III*, which he read as requiring a showing that the testimony of the accomplice witnesses would have exculpated Rivera had they not been

constrained by their plea agreements.  *Id.* at 392, ¶ 37, 86 P.3d at 972.  Because Rivera had not established that the accomplice witnesses' testimony would have exculpated him, Judge Thompson reasoned, there was no due process violation.  *Id.* at ¶¶ 37-39.

¶10 We granted review to decide whether the court of appeals misapplied *Fisher III* in holding that the accomplice witnesses' plea agreements were impermissible consistency agreements.

## II.  DISCUSSION

### A.  Background

¶11 Accomplice testimony is generally admissible at trial, even if procured by the offer of a lenient sentence and secured through a plea agreement.  *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972); *State v. Armstrong*, 208 Ariz. 345, 353, ¶ 39, 93 P.3d 1061, 1069 (2004).  While prosecutors may not knowingly allow a witness to testify falsely, *see State v. Ferrari*, 112 Ariz. 324, 334, 541 P.2d 921, 931 (1975), cross-examination is the appropriate tool for probing the truthfulness of a witness's statements.  *Hoffa v. United States*, 385 U.S. 293, 311 (1966); *State v. King*, 180 Ariz. 268, 276, 883 P.2d 1024, 1032 (1994).  Skillful cross-examination should expose to the jury any motivation the witness may have to lie, such as to preserve a favorable plea deal, and the jury must determine the witness's credibility.  *Hoffa*, 385 U.S. at 311.

## B. Prohibition of Consistency Agreements

¶12 Although we allow accomplices to testify pursuant to plea agreements, we have held that provisions that require a pleading defendant to give testimony consistent with a previously given statement of the facts are unenforceable in Arizona. *Fisher III*, 176 Ariz. at 73, 859 P.2d at 183.

¶13 The issue first came before us in *Fisher III*, 176 Ariz. 69, 859 P.2d 179. In that case, Defendant James Fisher's wife, Ann Fisher, signed an agreement allowing her to plead guilty to a lesser felony if her testimony at James's murder trial did "not vary substantially in relevant areas [from] statements previously given [to] investigative officers." *Id.* at 71, 859 P.2d at 181. The agreement did not require her to testify truthfully. Despite the agreement, Ann asserted her Fifth Amendment rights and refused to testify at James's trial. *Id.* The defense then submitted her plea agreement into evidence and James was convicted of the murder. *Id.*

¶14 At a later hearing on a motion for a new trial, Ann testified about conflicting statements she had made to various people, saying at times that James had committed the murder and at other times that she had done it. *Id.* at 72, 859 P.2d at 182. She stated that she had invoked the Fifth Amendment both on the advice of her lawyer and because she did not want to violate, and possibly lose, her plea deal with the State. *Id.*

¶15     We ruled that a witness must be allowed to testify truthfully and therefore cannot be compelled to testify consistently with a previously given statement regardless of the truth of that statement. *Id.* at 73, 859 P.2d at 183. Such agreements may "undermine the reliability and fairness of the trial and plea bargaining processes and taint the truth-seeking function of the courts." *Id.* at 74, 859 P.2d at 184. We observed, however, that "[p]lea agreements may, of course, properly be conditioned upon truthful and complete testimony." *Id.*

¶16     The plea terms in this case differ in one significant respect from the ones at issue in *Fisher III*. Unlike the agreement in *Fisher III*, these plea agreements required Valenzuela and Saiz to testify "fully, accurately, and truthfully."[1] While the agreements contain an avowal by the witnesses that their prior statements were truthful, unlike the agreements in *Fisher III*, the State did not expressly condition the agreements upon the testimony at trial being consistent with the prior statements. That the agreements also required Valenzuela and Saiz to avow that their August 10, 1998,

---

[1]     The agreements also were not signed by the judge, a provision we viewed with concern in *Fisher III* as giving the imprimatur of the courts and imposing additional pressure on the witness. *Id.* at 74-75, 859 P.2d at 184-85. Moreover, we note that unlike Rivera, Fisher pursued his claim in a Rule 32 proceeding rather than on direct review. *See id.* at 75-76, 859 P.2d at 185-86.

statements were truthful is not the same as requiring them to testify consistently with that specific version of the facts. Instead, Valenzuela and Saiz each acknowledged that the August 10th version of the facts was true, and each promised to testify truthfully. The State is entitled to seek both of these representations from witnesses. *See People v. Garrison*, 765 P.2d 419, 427-30 (Cal. 1989).

¶17 Our concern in *Fisher III* was that enforcing a consistency provision would allow the prosecutor "to persuade an accomplice to disregard his oath of truthfulness" in order to obtain a lenient plea deal. 176 Ariz. at 74, 859 P.2d at 184 (quoting Yvette A. Beeman, Note, *Accomplice Testimony Under Contingent Plea Agreements*, 72 Cornell L. Rev. 800, 824 (1987)); *see also State v. Cook*, 170 Ariz. 40, 59, 821 P.2d 731, 750 (1991) (acknowledging the ethical concerns inherent in consistency agreements). The critical issue is not whether the witness will feel an obligation to testify to the same facts earlier told the prosecutors or police, but rather whether the prosecution has conditioned the plea agreement upon such testimony, regardless of the truth of the earlier statement. *See Fisher III*, 176 Ariz. at 74, 859 P.2d at 184. All accomplice plea agreements put some pressure on a cooperating witness. *People v. Allen*, 729 P.2d 115, 131 (Cal. 1987). But a consistency agreement has the strong potential to procure

untruthful testimony if the agreement is not also conditioned upon the requirement of truthful testimony. *Fisher III*, 176 Ariz. at 74, 859 P.2d at 184. It is this tainting of the "truth-seeking function of the courts" that makes consistency provisions invalid. *Id.*

¶18    The agreements in question in this case neither compel the witnesses to disregard their oaths of truthfulness nor bind them to a particular script or result, such as the conviction of the defendant. The agreements now at issue would allow a witness who has truthfully recounted the facts before trial to nonetheless truthfully recount the facts at trial in a manner not fully consistent with her previous statements — as a result, for example, of new information or refreshed recollection. Either witness could validly avow that she believed her statements on August 10, 1998, to be truthful at the time, yet later recalled other information that required her to alter her testimony at trial. What *Fisher III* forbids is an agreement that requires the witness to testify consistently with a previous statement at trial even when doing so would render the trial testimony untruthful. *Id.* at 73, 859 P.2d at 183. By their terms, these agreements do not have that effect.

¶19    Other courts reviewing plea terms that require conformity or agreement with prior statements have held that the witness's testimony could be admitted, as long as certain

- 10 -

safeguards were in place. *See United States v. Dailey*, 759 F.2d 192, 200 (1st Cir. 1985) (holding plea agreements valid because accompanied by the procedural safeguards of jury disclosure, cross-examination, and jury instructions); *State v. Burchett*, 399 N.W.2d 258, 267 (Neb. 1986) (finding no showing that the witness testimony was "so tainted as to require its preclusion" and relying on the jury to weigh the veracity of the witness's statements); *Sheriff, Humboldt County v. Acuna*, 819 P.2d 197, 200 (Nev. 1991) (concluding that "bargaining for specific trial testimony . . . is not inconsistent with the search for truth or due process," unless it requires a predetermined script or result); *State v. Bolden*, 979 S.W.2d 587, 592-93 (Tenn. 1998) (upholding plea agreement and recognizing safeguards, including witness's promise to testify truthfully, disclosure of the agreement to the defendant, cross-examination, and jury instructions, as sufficient to protect the defendant and the system); *State v. Clark*, 743 P.2d 822, 828 (Wash. Ct. App. 1987) (concluding that requirement in plea agreement for "complete and truthful" testimony merely gave "assurance of reliability to the State" and did not require specific testimony); *State v. Nerison*, 401 N.W.2d 1, 4 (Wis. 1987) (noting that "[c]ross-examination, not exclusion, is the proper tool for challenging the weight and credibility of accomplice testimony"). Some courts permitted the testimony because the plea agreement

provisions at issue required the witnesses to testify truthfully and did not require that the witnesses follow a script. *E.g.*, *Burchett*, 399 N.W.2d at 267; *Acuna*, 819 P.2d at 200; *Clark*, 743 P.2d at 828. Other courts relied upon safeguards such as disclosure of the agreement to the defense and jury, cross-examination, and jury instructions to protect the defendant's right to a fair trial. *E.g.*, *Dailey*, 759 F.2d at 200; *Bolden,* 979 S.W.2d at 592-93; *Nerison*, 401 N.W.2d at 4. They trusted the jury to determine the credibility of the witnesses and reasoned that the witnesses' obligation to testify truthfully overcame any pressure they might have felt to testify consistently with a prior statement. *See Nerison*, 401 N.W.2d at 4. Unlike these jurisdictions, Arizona does not allow the use of pure consistency agreements, even with safeguards. But where, as here, the provisions do not create a consistency agreement, these safeguards adequately protect the defendant's rights.

¶20    The safeguards of an informed jury and defendant, cross-examination, and jury instructions on plea agreements were all present in Rivera's case. These safeguards, coupled with the fact that the agreements at issue are not true consistency agreements, adequately protected Rivera's rights. Moreover, Rivera has not shown that Valenzuela and Saiz did not tell the truth on any material issue. Although Valenzuela's and Saiz's

- 12 -

testimony at trial did differ in minor respects from their August 10th statements, inconsistencies in witness testimony go not to the admissibility of testimony, but rather to the credibility of the witnesses and the weight to be accorded to the evidence, which are issues for the jury to resolve. *State v. Money,* 110 Ariz. 18, 25, 514 P.2d 1014, 1021 (1973). In this case, the jury apparently believed Valenzuela's and Saiz's testimony because they convicted Rivera on all charges. Because the record is devoid of any showing that the accomplice witnesses were not telling the truth, we cannot find error unless we assume that the accomplice witnesses lied and that the State presented false testimony. We are not willing to make such assumptions.

¶21    Moreover, although Rivera did propose jury instructions that were not given on the effect of the plea agreements, he failed to object to the jury instructions actually given. He therefore acquiesced to them. *See* Ariz. R. Crim. P. 21.3(c); *State v. Gendron*, 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991). Given this state of the record, we find no error.

### C.    The State's Mis-statement

¶22    Rivera asserts that the State's attorney, in its brief to the court of appeals, interpreted the plea agreements as meaning that Valenzuela and Saiz "could not deviate" from the

statements made in the August 10, 1998, videotape. The interpretation of an assistant attorney general who was not a party to the plea agreement does not change the written terms of the agreement. *See Smith v. Melson, Inc.*, 135 Ariz. 119, 121, 659 P.2d 1264, 1266 (1983) ("The construction of a contract is a question of law where the terms of the agreement are plain and unambiguous."); *Coy v. Fields*, 200 Ariz. 442, 445, ¶ 9, 27 P.3d 799, 802 (App. 2001) ("Plea agreements are contractual in nature and subject to contract interpretation."). Moreover, the State strenuously argued to the contrary in the trial court, the court of appeals, and this court. Indeed, the same court of appeals brief in which Rivera finds the statement on which he relies also asserts that the plea agreements "did not seek consistency, but rather truthful testimony." We agree with the State that "the agreements in this case did not place 'undue' pressure on the accomplice witnesses to testify to a particular version of events *without regard to its truthfulness*, nor did the agreements frustrate the jury's ability to judge the accomplice witnesses' credibility." One mis-statement to the contrary does not change the text of the agreements.

### D.   The Witnesses' Misunderstanding

¶23      Nor does the fact that Valenzuela and Saiz may have misunderstood the plea provisions affect the terms of the agreements. Cases reveal that it is not unusual for parties to

- 14 -

misunderstand terms in their plea agreements. *See, e.g., State v. Diaz*, 173 Ariz. 270, 272, 842 P.2d 617, 619 (1992); *State v. City Court*, 131 Ariz. 236, 236, 640 P.2d 167, 167 (1981); *State v. Corvelo*, 91 Ariz. 52, 55, 369 P.2d 903, 905 (1962); *State v. Richardson*, 175 Ariz. 336, 339, 857 P.2d 388, 391 (App. 1993). Yet we do not allow plea agreements to be withdrawn unless substantial objective evidence is shown of a misunderstanding of a material term. *Diaz*, 173 Ariz. at 272, 842 P.2d at 619. No such showing was made here. To the contrary, despite acknowledging that the agreements required them to testify consistently with their August 10th statements, both Valenzuela and Saiz stated that they understood and agreed that they were required to testify truthfully, and both testified that they had done so.

¶24 As evidence that consistency was not required, Valenzuela made several statements during her trial testimony that varied from those she had made in her earlier talks with the police. The State never attempted to revoke her plea agreement on that basis, supporting its contention that the agreements were not pure consistency agreements.

¶25 Like this case, *People v. Fields* involved an agreement that required the witness to testify truthfully regarding the "events that occurred on September 28, 1978." 673 P.2d 680, 699 (Cal. 1983). On cross-examination, the witness testified, just

- 15 -

as Valenzuela and Saiz did, that she thought that her testimony had to be consistent with her prior statements in order to get the benefit of her plea bargain. *See id.* On re-direct, however, she testified that prosecutors told her to testify truthfully, not to give a particular story. *Id.* The court held the agreement valid because it required only that the witness testify to the truth. *Id.* at 700. The court observed that if the witness's prior statement was truthful, then by agreeing to testify, she agreed to testify both consistently with her prior statement and to the truth. *Id.* at 699-700.

¶26    Similarly, in this case the agreements required both truthful testimony and an avowal that the truth was told in the August statements. And as in *Fields*, if the statements Valenzuela and Saiz made in August were truthful and they testified at trial in accordance with those earlier statements, they then fulfilled their obligation to testify truthfully at trial. Regardless of their belief that the agreements required them to testify consistently with their August statements, they appeared to understand their paramount obligation to testify truthfully.

### E.    Public Policy

¶27    Public policy also supports the use of accomplice-witness plea agreements. The government must have witnesses in order to prosecute crimes, *State v. Watkins*, 207 Ariz. 562, 565

- 16 -

n.4, 88 P.3d 1174, 1177 n.4 (App. 2004), and for many crimes, accomplices "may be the only credible witnesses of criminal activity." *United States v. Reid,* 19 F. Supp. 2d 534, 537 (E.D. Va. 1998). "[W]ithout their testimony, the government [might] not be able to obtain convictions." *Id.* Indeed, "[no] practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence." *United States v. Cervantes-Pacheco,* 826 F.2d 310, 315 (5th Cir. 1987). In such cases, the prosecution must be able to enter into plea agreements that protect the defendant, the public, and the witness.

¶28 Some of the concern that accomplice plea agreements will encourage false testimony is alleviated by the role of prosecutors in the judicial system. Prosecutors have a duty to the court not to knowingly encourage or present false testimony. *Ferrari*, 112 Ariz. at 334, 541 P.2d at 931; *State v. Razinha*, 123 Ariz. 355, 359, 599 P.2d 808, 812 (App. 1979); *see also* Ariz. R. Sup. Ct. 42, ER 3.3(a)(3). Prosecutors are not simply advocates, but are "minister[s] of justice." Ariz. R. Sup. Ct. 42, ER 3.8 cmt. 1; *Maretick v. Jarrett*, 204 Ariz. 194, 197, ¶ 10, 62 P.3d 120, 123 (2003). And prosecutors must present witnesses as they are, *Ferrari*, 112 Ariz. at 334, 541 P.2d at

- 17 -

931, "warts and all."  Absent a showing that the prosecution was aware of any false testimony, the credibility of witnesses is for the jury to determine.  *Id.*

¶29      The plea agreements in this case provide an acceptable way to satisfy these prosecutorial duties.  The State should also ensure that witnesses signing agreements containing such provisions understand that their obligation to testify truthfully is paramount.

### III.  CONCLUSION

¶30      For the foregoing reasons, we vacate the opinion of the court of appeals and reinstate and affirm the verdict and judgment of the trial court.


_____
                              Rebecca White Berch, Justice


CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Ruth V. McGregor, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice