OPINION
KELLY, Presiding Judge.
¶1 Veronica Sanchez-Equihua appeals from her convictions and sentences for two counts of possession of a narcotic drug for sale and one count of possession of drug paraphernalia. She argues her constitutional right to compulsory process was violated because a term in her codefendants’ plea agreements prevented them from testifying on her behalf and the trial court erred by failing to compel the witnesses to testify.[1] We vacate her convictions and sentences and remand for a new trial.
Factual and Procedural Background
¶2 We view the facts in the light most favorable to upholding Sanehez-Equihua’s convictions and sentences. See State v. Be- *56 cerra, 231 Ariz. 200, ¶2, 291 P.3d 994, 996 (App.2013). In September 2011, police discovered powder cocaine and cocaine base in a car driven by Jahziel Gutierrez. Suspecting the drugs had been supplied from an apartment shared by Sanchez-Equihua and her husband Ivan Orantes-Lerma, police searched the apartment the same day. In the kitchen they found cocaine and cocaine base in a lunch bag and a small bag on the counter. They also discovered two drug-ledger notebooks in the apartment. Police did not see Sanchez-Equihua during their surveillance of the apartment, and no residents were home when the apartment was searched.
¶ 3 Sanchez-Equihua, Orantes-Lerma, and Gutierrez were charged with multiple offenses based on the drugs seized that day. Orantes-Lerma and Gutierrez each pled guilty to one count of attempted possession of a narcotic drug for sale and were sentenced accordingly. Both plea agreements included the following “special term”: “Defendant agrees that he/she has no exculpatory information as to any codefendant(s).”[2] Each agreement also provided that the defendant waived all double jeopardy and statute of limitations claims, so that “[i]f the defendant fail[ed] to comply with any of the provisions or conditions of th[e] plea agreement at any time before or after sentencing,” the agreement would “become void,” and the state would be “free to prosecute the defendant for all charges.”
¶ 4 Sanchez-Equihua proceeded to a jury trial. The trial court asked the parties to address an issue that had been raised “concerning the codefendant[s’] Fifth Amendment rights,” explaining “both [had] signed pleas indicating they had no exculpatory evidence,” but that “[t]hey now want to exculpate [Sanchez-Equihua].” Counsel for the state did not take a definitive position on whether exculpatory testimony by Orantes-Lerma or Gutierrez would constitute a breach of their agreements, but stated she thought the clauses were material and enforceable. She told the court it was “a legal possibility” the state would seek to withdraw the pleas if they testified, and acknowledged she had conveyed that possibility to codefen-dants’ counsel. Sanchez-Equihua argued the codefendants no longer could validly invoke their Fifth Amendment privilege because their convictions and sentences were final and they had waived their right against self-incrimination in this case.
¶ 5 Orantes-Lerma and Gutierrez appeared before the trial court on the second day of trial. Orantes-Lerma had stated in a presentence report that Sanchez-Equihua “did not know about the drugs.” But his counsel told the court she believed “if [Or-antes-Lerma] were to testify on the stand at this point it would be a violation of his plea bargain and the State would be able to withdraw from the plea,” placing him in jeopardy. Orantes-Lerma ultimately invoked his Fifth Amendment privilege “so as not to have to start once again and be tried again.” Gutierrez similarly stated he had decided “[n]ot to testify because [he did not] want to break [his] plea.” The court stated the plea agreement clause was “a legitimate prosecutorial tool ... when anticipating a problem with the codefendant exonerating [an]other defendant post plea and post sentence.” It concluded it could not compel Orantes-Lerma or Gutierrez to testify.
¶ 6 After the jury found her guilty, San-ehez-Equihua was sentenced to concurrent terms of imprisonment totaling three years. This appeal followed.
Plea Agreement Term
¶ 7 Sanchez-Equihua argues the no-exculpatory-information term in her codefendants’ plea agreements violated her Sixth Amendment right to compulsory process to call witnesses in her favor. See U.S. Const, amend. VI; see also Ariz. Const, art. II, § 24 (“In criminal prosecutions, the accused shall have the right ... to have compulsory process to compel the attendance of witnesses in his own behalf.”). We review constitutional issues and purely legal questions de novo. *57 State v. Gay, 214 Ariz. 214, ¶ 4, 150 P.3d 787, 790 (App.2007).
¶ 8 A criminal defendant has a Sixth Amendment right to “present his own witnesses to establish a defense.” Washington v. Texas, 388 U.S. 14, 18-19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The United States Supreme Court has recognized that the right to offer witness testimony and to compel witnesses’ attendance when necessary is so fundamental that it is incorporated into the Fourteenth Amendment’s Due Process Clause and therefore applies to the states. Id. at 17-19, 87 S.Ct. 1920. “It is well established that ‘substantial government interference with a defense witness’s free and unhampered choice to testify amounts to a violation of due process.’ ” Earp v. Omoski, 431 F.3d 1158, 1170 (9th Cir.2005), quoting United States v. Vavages, 151 F.3d 1185, 1188 (9th Cir.1998); see also Webb v. Texas, 409 U.S. 95, 97-98, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972).
¶ 9 The state emphasizes that a witness’s Fifth Amendment right to refuse to testify can “trump” a defendant’s Sixth Amendment right to compel the witness’s testimony. State v. Carlos, 199 Ariz. 273, ¶ 18, 17 P.3d 118, 123 (App.2001). We agree, and Sanchez-Equihua concedes that this is an accurate statement of law. However, it does not answer the issue presented in this case. Sanehez-Equihua does not, as the state suggests, argue she should have been able to compel the codefendants to waive their Fifth Amendment privilege. Instead, she contends the state impermissibly used its power to substantially interfere with their decision whether to testify.
¶ 10 Arizona case law has not addressed directly whether the specific plea agreement term challenged in this case violates a defendant’s Sixth Amendment rights. However, in State v. Fisher, 176 Ariz. 69, 859 P.2d 179 (1993), our supreme court addressed the validity of a similar plea agreement condition that compelled a witness to testify consistently with a previous statement.
¶ 11 In that case, defendant James Fisher and his wife, Ann, both had been charged with murder. Id. at 71, 859 P.2d at 181. Ann signed an agreement allowing her to plead guilty to a reduced charge if her testimony at James’s trial did “not vary substantially in relevant areas [from] statements previously given investigative officers.” Id. At James’s trial, Ann invoked her Fifth Amendment rights and refused to testify. Id. At a later hearing on James’s motion for a new trial, Ann testified about conflicting statements she had made about whether she or James had killed the victim. Id. at 72, 859 P.2d at 182. She stated she had invoked her Fifth Amendment right at his trial based equally on her counsel’s advice and on her desire to preserve her agreement with the state. Id.
¶ 12 The Fisher court concluded that, although a plea agreement may properly be conditioned upon truthful and complete testimony, “consistency provisions,” including the one contained in the wife’s agreement, were unenforceable. Id. at 73, 859 P.2d at 183. It first noted the state’s “ethical responsibility to ‘scrupulously avoid any suggestion calculated to induce the witness to suppress or deviate from the truth, or in any degree to affect his free and untrammeled conduct when appearing at the trial or on the witness stand.’ ” Id., citing State v. Fisher, 141 Ariz. 227, 244 n. 5, 686 P.2d 750, 767 n. 5 (1984) and ABA Canons of Prof 1 Ethics 39. And it pointed out that consistency provisions “taint the truth-seeking function of the courts by placing undue pressure on witnesses to stick with one version of the facts regardless of its truthfulness” and “frustrate the jury’s duty to determine the credibility of the witness.” Id. at 74, 859 P.2d at 184. The court acknowledged that, although Ann had not testified at James’s trial, she arguably “was prevented from supplying evidence helpful to the defendant by reason of the improper ... provision.” Id. It cited with approval cases from other jurisdictions holding that “due process prohibits a plea agreement from conditioning leniency upon anything other than truthful and complete testimony,” and ultimately concluded “the prosecution should have bargained with Ann only for truthful and accurate testimony.” Id. at 73, 74, 859 P.2d at 183,184.
¶ 13 In State v. Rivera, 210 Ariz. 188, ¶ 1, 109 P.3d 83, 84 (2005), our supreme court *58 clarified that a plea-agreement term avowing that a previous statement was true did not violate due process when the agreement also required truthful testimony. The court determined Rivera’s rights were adequately protected because the witnesses’ plea agreements in his case “neither compelled] the witnesses to disregard their oaths of truthfulness nor b[ound] them to a particular script or result.” Id. ¶ 18. It found that, under the terms of the agreement, the witness had a “paramount obligation to testify truthfully” and encouraged the state to ensure that witnesses signing such agreements in the future understood that obligation. Id. ¶¶26, 29.
¶ 14 Other jurisdictions have analyzed plea-agreement terms more similar to the ones at issue in this case; most of those cases involve “no-testimony” clauses, in which the pleading defendant agrees not to testify in regard to another defendant. All of the cases we have found that address this issue have concluded such agreements violate due process. E.g., Maples v. Stegall, 427 F.3d 1020, 1033-34 (6th Cir.2005) (plea requirement to not testify on codefendant’s behalf impaired defense and may have violated right to compulsory process); United States v. Henricksen, 564 F.2d 197, 198 (5th Cir. 1977) (agreement not to testify in any manner regarding codefendant constituted substantial interference with witness’s choice to testify and violated due process); State v. Asher, 18 Kan.App.2d 881, 861 P.2d 847, 850-51 (1993) (threatening witness with denial of plea agreement if he testified violated due process rights and hindered jury “in its search for truth”); Bhagwat v. State, 338 Md. 263, 658 A.2d 244, 249 (1995) (plea agreement term inducing or encouraging witness’s silence denies right to compulsory process); State v. Fort, 101 N.J. 123, 501 A.2d 140, 144 (1985) (“no testimony” agreement violated rights to due process and to present favorable witnesses). The basic principles of due process relied upon in these cases are consistent with those articulated in Fisher. As the court noted in Fort, “although inevitably an adversarial proceeding, [a trial] is above all else a search for truth[; t]hat quest is better served when the State does not suppress the truth by sealing the lips of witnesses.” 501 A.2d at 144.
¶ 15 We conclude the no-exculpatory-information clauses in the codefendants’ plea agreements, as they were applied in this case, substantially interfered with their “free and unhampered choice to testify,” thereby violating Sanchez-Equihua’s right to compulsory process. See Earp, 431 F.3d at 1170. In contrast to the agreement upheld in Rivera, the agreements signed by Orantes-Lerma and Gutierrez did not include a term establishing or clarifying a “paramount obligation to testify truthfully.” 210 Ariz. 188, ¶ 26,109 P.3d at 88-89.
¶ 16 Although the clauses in this case did not explicitly preclude the pleading defendants from testifying, the state acknowledged their purpose was to prevent codefendants from taking a plea and then “tak[ing] the fall” for another codefendant. Consistent with that purpose, the prosecutor notified the potential witnesses their testimony could lead to reinstated charges,[3] and both witnesses indicated their decision not to testify was motivated by a desire to avoid that risk. In this way, the clauses, like the improper “consistency clauses” discussed in Fisher, “taint[ed] the truth-seeking function of the court[] by placing undue pressure on [the] witnesses to stick with one version of the facts regardless of its truthfulness.” 176 Ariz. at 74, 859 P.2d at 184. And, by preempting Sanchez-Equihua’s ability to present her witnesses, the agreements undermined the jury’s ability to make its own determination of the witnesses’ credibility. See id.; see also Rivera, 210 Ariz. 188, ¶ 11, 109 P.3d at 85 (cross-examination “appropriate tool” for probing witness’s truthfulness; should expose any motivation to lie). Therefore, Sanchez-Equihua is entitled to a new trial. See Carlos, 199 Ariz. 273, ¶ 27,17 P.3d at 125.
¶ 17 In a related argument, Sanchez-Equi-hua contends the trial court abused its discretion by failing to compel her eodefendants *59 to testify. Although we need not resolve this issue separately because we already have determined Sanchez-Equihua is entitled to a new trial, we address the subject briefly because it is likely to recur on remand. See State v. May, 210 Ariz. 452, ¶ 1, 112 P.3d 39, 40 (App.2005).
¶ 18 If a witness validly invokes his Fifth Amendment right against self-inerimination, the defendant’s right to compulsory process must yield to the witness’s privilege to remain silent. State v. Rosas-Hernandez, 202 Ariz. 212, ¶ 10, 42 P.3d 1177, 1181 (App. 2002). However, “to validly invoke Fifth Amendment rights, a witness must demonstrate a reasonable ground to apprehend danger from being compelled to testify.” Id. ¶ 11. Generally, when “there can be no further incrimination,” such as when a judgment and sentence have become final, “there is no basis for the assertion of the privilege.” Mitchell v. United States, 526 U.S. 314, 326, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999).
¶ 19 It appears the trial court’s decision whether to compel Orantes-Lerma and Gutierrez to testify was based on its belief that their charges could be reinstated as a result of any testimony on Sanehez-Equihua’s behalf. For the reasons stated above, however, it would be error to allow the state to revoke the codefendants’ plea agreements based on their decision to testify truthfully at Sanchez-Equihua’s trial. Therefore, to the extent the codefendants on remand seek to invoke their privilege to remain silent, we conclude they cannot do so based on the no-exculpatory-information clauses because the clauses do not constitute a “reasonable ground to apprehend danger” of further incrimination. Rosas-Hernandez, 202 Ariz. 212, ¶ 11, 42 P.3d at 1181.
The Dissent and Special Concurrence
¶20 Our dissenting and specially concurring colleague focuses on the plea agreement term and how it should have been interpreted. However, the issue we are asked to decide in this appeal is not whether the term on its face necessarily results in a constitutional violation but whether Sanchez-Equihua's rights were violated by its interpretation and application in this case. Our resolution depends on the record, including the state’s representation that the term was inserted for the purpose of hindering particular testimony (precisely the type of testimony suggested by Orantes-Lerma’s pre-sentence report — “tak[ing] the fall” for the defendant by accepting full responsibility), the state’s opinion that the term was material and enforceable, its communication to the defendants that there was a risk of reinstated charges if they testified, and the codefen-dants’ statements on the record that this was the reason for their invocations.
¶ 21 The dissent suggests the exculpatory evidence term in the codefendants’ plea agreements was included to ensure the state’s compliance with its obligations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). But, as discussed above, the state’s actual use of the term belies the suggestion that its purpose was to disclose all exculpatory evidence to Sanchez-Equihua. Given that the facts underlying the prosecution here would likely generate a motive for one codefendant to exculpate another — including that Sanchez-Equihua was the spouse of one of the code-fendants — and given the state’s actual use of the exculpatory evidence clause when Sanchez-Equihua sought to secure the testimony of the codefendants — we think it more likely the term was placed in the agreement to address the predictable risk that the pleading codefendants might exonerate any non-pleading codefendants after securing their own sentence reductions.[4]
¶22 Our view differs from that of our dissenting colleague in that we believe the assessments of the trial court, the state, and the codefendants with the aid of their counsel — who all concluded the terms presented sufficient risk of material breach to affect the codefendants’ decision to testify— *60 were reasonable and could recur. Contrary to our colleague’s contention that the agreements did not “set forth any consequences for any potential or perceived violation of the codefendants’ representations,” they explicitly provided that “[i]f the defendant fail[ed] to comply with any of the provisions or conditions of th[e] plea agreement at any time before or after sentencing,” the agreement would “become void,” and the state would be “free to prosecute the defendant for all charges.” The threat is not an empty one: even after sentencing, when a defendant violates a plea agreement, the court may set aside the judgment and plea and reinstate the original information. See Ricketts v. Adamson, 483 U.S. 1, 7-8, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (affirming Arizona court’s conviction of defendant for first-degree murder after he had been sentenced for lesser offense pursuant to plea agreement but refused to testify at codefendants’ retrial); Adamson v. Superior Court, 125 Ariz. 579, 583-84, 611 P.2d 932, 936-37 (1980).
¶ 23 We agree with our colleague that the trial court’s interpretation of the agreement ultimately was incorrect; as this opinion now clarifies, the terms are unenforceable to the extent they prohibit truthful testimony. But we cannot conclude that, because the terms should not have been interpreted as they were, and the constitutional violation should not have happened, that there was no violation. Instead, we answer the question Sanchez-Equihua has presented on appeal, which requires us to consider how the term was used in this ease and what ultimate effect it had on Sanchez-Equihua’s ability to present her defense. It is up to the state to decide whether and how it uses such terms in the future. This opinion merely clarifies that, if the terms ultimately are used to hinder testimony, as they were in this ease, a constitutional violation has occurred.
¶ 24 Our colleague contends we have taken Fisher “too far” by applying it in this ease because the agreement here did not require consistent testimony. This narrow approach discounts significant aspects of Fisher and the overall body of case law upon which we have relied, which reflects well-settled principles of due process prohibiting interference with witness testimony regardless of form. See Fisher, 176 Ariz. at 74, 859 P.2d at 184 (witness prevented from supplying testimony by reason of improper plea agreement provision; agreement may be conditioned only on truthful and accurate testimony); see also, e.g., Washington, 388 U.S. at 22-23, 87 S.Ct. 1920 (rule disqualifying accomplice testimony violates right to compulsory process); Earp, 431 F.3d at 1170 (test for violation of due process is whether government has interfered with free and unhampered choice to testify); Henricksen, 564 F.2d at 198 (agreement not to testify interfered with witness’s choice to testify and violated due process); Bhagwat, 658 A2d at 249 (plea agreement term inducing or encouraging witness’s silence denies right to compulsory process); Fort, 501 A2d at 144 (“no testimony” agreement violated defendant’s due process rights). Rather than “broadly invalidat[ing] any provision conceivably construed as influencing a witness’s decision to testify,” as our colleague suggests, we have simply applied the established rule that prohibits the government from substantially interfering with a witness’s unhampered choice to testify. See Earp, 431 F.3d at 1170.
Harmless Error Review
¶ 25 The state argues any error was harmless because even absent the no-exculpatory-information clause, the codefendants would have invoked their Fifth Amendment privilege against self-incrimination and refused to testify and because the evidence of Sanchez-Equihua’s guilt was overwhelming.
¶ 26 “We must reverse a conviction unless we are ‘confident beyond a reasonable doubt that the error had no influence on the jury’s judgment.’ ” Carlos, 199 Ariz. 273, ¶24, 17 P.3d at 124, quoting State v. Bible, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993). The determination must be made on a ease-by-case basis. Id. The state has the burden to prove any error was harmless. State v. Henderson, 210 Ariz. 561, ¶ 18, 115 P.3d 601, 607 (2005).
¶ 27 The record contradicts the state’s assertion that “even in the absence of the plea agreements, the codefendants still would have asserted their Fifth Amendment *61 privilege against self-incrimination.” First, both eodefendants stated on the record that they were invoking their Fifth Amendment right in order to avoid breaching their plea agreements. Second, it is apparent the trial court’s decision not to compel the witnesses’ testimony was based, at least in part, on its erroneous belief that the codefendants faced a risk of reinstated charges because the exculpatory-information clauses could be enforceable to prohibit testimony.
¶ 28 Nor has the state carried its burden to establish any error was harmless by presenting overwhelming evidence of SanchezEquihua’s guilt. Without further discussion or any citation to evidence in the record, it makes a single, conclusory statement that “the evidence against Sanchez-Equihua was overwhelming, such that the testimony of the codefendants would not have offered her much help.” Based on our review of the record, we conclude the evidence, although sufficient, was not overwhelming.[5] And we will not speculate about the weight the jury may have given any exculpatory testimony by Orantes-Lerma or Gutierrez. Therefore, we cannot conclude beyond a reasonable doubt that the violation of Sanchez-Equihua’s compulsory process rights had no influence on the convictions. See Carlos, 199 Ariz. 273, ¶ 24, 17 P.3d at 124.
Disposition
¶ 29 For the foregoing reasons, we vacate Sanehez-Equihua’s convictions and sentences and remand the case for a new trial.

. Sanchez-Equihua also argues, and the state concedes, the imposition of a criminal restitution order constituted an illegal sentence. Because we vacate her convictions and sentences, we do not reach this issue.

. The terms of Orantes-Lerma’s agreement also provided the agreement was contingent upon Sanchez-Equihua accepting a plea.

. We find no support for the state’s suggestion that in order for Sanchez-Equihua to establish a violation of her constitutional rights, she was required to show the prosecutor was "acting in a[ ] vindictive or intimidating manner."

. Of course, as Rivera makes clear, there are other ways, including redrafting the provision in question, by which the state may achieve this legitimate goal without "frustrat[ingj the jury’s duty to determine the credibility of the wit-nessjes].” Fisher, 176 Ariz. at 74, 859 P.2d at 184.

. The evidence consisted of the cocaine and cocaine base found in a lunch bag and small plastic baggie while Sanchez-Equihua was not at home, and her handwriting on a few pages of two notebooks used as drug ledgers, which were found in the apartment. Sanchez-Equihua testified she did not know the notebooks were drug ledgers and her husband had gotten upset and nervous when he saw her writing in one.