NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

LAWRENCE E. HAND, *Appellant.*

No. 1 CA-CR 18-0372
No. 1 CA-CR 18-0824
(Consolidated)
FILED 10-8-2019

---

Appeal from the Superior Court in Apache County
No. S0100CR201500188
The Honorable Dale P. Nielson, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

Criss Candelaria Law Office PC, Concho
By Criss E. Candelaria
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Jennifer M. Perkins joined.

---

**M c M U R D I E**, Judge:

¶1        Lawrence Eric Hand appeals his convictions and the resulting sentences from four counts of aggravated assault and one count of disorderly conduct. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND[1]

¶2        The incident began after a confrontation escalated between Hand's wife, Ashley Crawford, and B.M. Crawford alleged that B.M. threatened her with a folding knife, so she called her husband to the scene. When Hand arrived, he was holding a gun and attacked B.M. on the driveway of his neighbors, F.D. and D.D. F.D. and D.D heard the commotion from inside their house and went to investigate. Before leaving the house, F.D. put his gun in his rear pocket. F.D. and D.D. saw B.M. struggling with Hand and tried to help B.M. During the scuffle, F.D.'s gun fell to the ground, and Crawford picked it up. Crawford fired the gun into the air multiple times. Hand, with his finger on the trigger of his gun, hit D.D. in the face and fired a shot that went through D.D.'s finger, jaw, and shoulder. Hand and Crawford left the scene, taking both guns and B.M.'s knife. Police arrived to find B.M. bleeding from scalp wounds and bite marks to his forearm and finger. Emergency personnel transported D.D. to a hospital in Phoenix to treat her gunshot wounds.

¶3        The State charged Hand with seven counts of aggravated assault for the injuries to D.D. and B.M. and for pointing his gun at D.D., F.D., and B.M., as well as one count of disorderly conduct. The State alleged that all eight counts were dangerous offenses. After a six-day trial, the jury found Hand guilty on four of the seven counts of aggravated assault and

---

[1]        We view the facts in the light most favorable to upholding the verdict and resolve all reasonable inferences against Hand. *State v. Harm*, 236 Ariz. 402, 404, ¶ 2, n.2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

for disorderly conduct. The jury found all convictions were dangerous offenses. Hand was sentenced to presumptive concurrent terms totaling 7.5 years in prison, with 92 days' presentence incarceration credit. Hand timely appealed, and this court has jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**A.     The Prosecutor Did Not Coerce or Intimidate Crawford into Invoking Her Fifth Amendment Right and Refusing to Testify.**

**¶4**          Hand first argues that the State impermissibly used its power to interfere with Crawford's decision to invoke her Fifth Amendment privilege against self-incrimination. We disagree.

**¶5**          In September 2013, Crawford entered into a plea agreement, pleading guilty to one count of aggravated assault for pointing a gun at D.D. The parties stipulated that Crawford would be released from jail, her sentence suspended, and the court would place her on five years of probation. The State agreed to dismiss the remaining counts against her, an unrelated marijuana offense charged after her arrest, and the allegations of dangerousness. The parties agreed to defer acceptance of the plea and sentencing until Hand's case was resolved.

**¶6**          After the State's case-in-chief at Hand's trial, the parties discussed whether the State could impeach Crawford with her plea agreement, and the dismissed marijuana case, depending on her testimony. Assuming her testimony was inconsistent with her plea, the Court noted that the State could withdraw from the plea agreement. The State agreed that if Crawford testified inconsistently with the plea agreement, either party to the agreement could withdraw because the court had not yet accepted it. The State also pointed out that if Hand was acquitted of all charges, Crawford could withdraw from the plea agreement. Eventually, because counsel still represented Crawford, the Court warned Crawford of the possibility of losing the benefit of her plea agreement after testifying and advised her to discuss her rights with counsel. When the State called Crawford testify in front of the jury, she invoked her Fifth Amendment privilege against self-incrimination upon the advice of her attorney.

**¶7**          "A criminal defendant has a Sixth Amendment right to 'present his own witnesses to establish a defense.'" *State v. Sanchez-Equihua*, 235 Ariz. 54, 57, ¶ 8 (App. 2014) (quoting *Washington v. Texas*, 388 U.S. 14,

18-19 (1967)). It is undisputed that "substantial government interference with a defense witness's free and unhampered choice to testify amounts to a violation of due process." *Id.* (citations omitted). However, "[a] defendant's constitutional rights are implicated only where the prosecutor or trial judge employs coercive or intimidating language or tactics." *United States v. Vavages*, 151 F.3d 1185, 1189 (9th Cir. 1998) (agreeing that perjury warnings "are not improper per se"); *see State v. Jones*, 197 Ariz. 290, 301–02, ¶ 21 (2000) (finding that the prosecutor did not threaten a defense witness when he did not contact the witness or his attorney directly and did not say he would pursue perjury charges regardless of how the witness testified); *see also State v. Rivera*, 210 Ariz. 188, 191, ¶ 17 (2005) (acknowledging that "[a]ll accomplice plea agreements put some pressure on a cooperating witness"). We review constitutional issues and purely legal questions *de novo*. *Sanchez-Equihua*, 235 Ariz. at 56, ¶ 7.

¶8        Here, the State did not impermissibly interfere with Crawford's choice to testify at Hand's trial. The prosecutor did not speak directly to Crawford or her attorney. The prosecutor never threatened to withdraw from the plea regardless of how Crawford testified. Instead, the prosecutor said the State "could" withdraw from the plea agreement if Crawford testified to facts that differed from her guilty plea. Nor did the judge use coercive language when he advised Crawford to speak to her attorney before testifying. After warning Crawford that the State could withdraw from the plea agreement, the judge said, "I think the State would act in good faith, but none of us are comfortable with you testifying until you've had the chance to talk to your lawyer." Crawford spoke with her attorney and, acting on his advice, decided to invoke her Fifth Amendment right not to testify.

¶9        Hand argues that the State planned to prevent Crawford from testifying; however, the record does not support this contention. The State subpoenaed Crawford and would have called her in its case-in-chief if Hand had not communicated that she would be a defense witness. The prosecutor also repeatedly brought up his intention to cross-examine and impeach Crawford with other evidence.

¶10        Hand also likens Crawford's unaccepted plea agreement to the consistency provision in *State v. Fisher*, 176 Ariz. 69, 73 (1993), requiring a witness to testify to a specific version of facts regardless of the truth. We are unpersuaded by such an analogy. The plea agreement contains no stipulations requiring Crawford to testify a certain way at Hand's trial. An unaccepted plea does place pressure on a defendant (here, Crawford) to tell the truth, and a plea agreement "may, of course, properly be conditioned

upon truthful and complete testimony." *Id.* Crawford's plea agreement, however, did not bind her "to a particular script or result." *Rivera*, 210 Ariz. at 191, ¶ 18. The State was only concerned that Crawford would change the facts supporting her guilty plea—that she committed aggravated assault against D.D. Hand fails to point to any caselaw preventing the State from withdrawing from a plea agreement if a defendant recants the basis for the guilty plea before acceptance.

¶11 Because the prosecutor did not coerce or intimidate Crawford, the plea agreement did not restrain Crawford's testimony, and Crawford consulted and acted on the advice of her attorney to refuse to testify, we hold that Hand's due process rights were not violated.

**B. Hand Has Not Shown That His Convictions Should Be Reversed for Prosecutorial Misconduct.**

¶12 Hand next contends that the prosecutor committed misconduct in this case. "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007) (quoting *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998)). "Reversal on the basis of prosecutorial misconduct requires that the conduct be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Hughes*, 193 Ariz. at 79, ¶ 26 (quoting *State v. Atwood*, 171 Ariz. 576, 611 (1992), *disapproved of on other grounds by State v. Nordstrom*, 200 Ariz. 229, 241, ¶ 25 (2001)). The defendant must show that there is a "reasonable likelihood" that the "misconduct could have affected the jury's verdict." *State v. Newell*, 212 Ariz. 389, 403, ¶ 67 (2006) (quoting *Atwood*, 171 Ariz. at 606). We review a properly preserved claim of prosecutorial misconduct for an abuse of discretion. *State v. Burns*, 237 Ariz. 1, 32, ¶ 147 (2015).

¶13 During closing arguments, the prosecutor twice mentioned that Crawford invoked her Fifth Amendment privilege in front of the jury. Hand objected to the prosecutor's comments, and the court overruled the objection. Commenting on Crawford's invocation of the privilege was error. *State v. Corrales*, 138 Ariz. 583, 587 n.2 (1983) (adverse inference may not be argued from party's failure to call a witness who "can be physically produced but cannot be compelled to testify"); *State v. McDaniel*, 136 Ariz. 188, 194 (1983) ("It is well settled that in criminal cases the jury is not entitled to draw any inferences from the decision of a witness to exercise his Fifth Amendment privilege."). Because Hand objected to the State's

comments, we review the error to determine if it was harmless beyond a reasonable doubt. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005).

**¶14**        We hold the State has shown beyond a reasonable doubt that the improper comments did not contribute to the verdicts. The court instructed the jury that anything the lawyers say in closing arguments was not evidence. *Newell*, 212 Ariz. at 403, ¶ 68 (prosecutor's improper comments were not reversible error in part because the jury was instructed "that anything said in closing arguments was not evidence"). We presume that the jurors followed the court's instructions. *Id.* Moreover, the jury's decision to acquit Hand on three of the seven aggravated assault charges demonstrates they followed the court's instructions and carefully considered the evidence. *See State v. Stuard*, 176 Ariz. 589, 600 (1993) (acquittal of some charges showed "jury's careful and proper consideration of the evidence," thus undermining argument of prejudice from improperly introduced evidence). And the two brief mentions of Crawford's invocation during a lengthy closing argument do not meet the standard of "pronounced and persistent" conduct requiring reversal. *Hughes*, 193 Ariz. at 79, ¶ 26 (quoting *Atwood*, 171 Ariz. at 611); *State v. Cota*, 102 Ariz. 416, 421 (1963) (prosecutor's comment in closing argument on key witness's refusal to testify, although undesirable and improper, was not reversible error). The evidence was conclusive, and the inappropriate argument did not deprive Hand of a fair trial.

**C.      The Superior Court Did Not Err by Permitting Crawford to Invoke Before the Jury and Not Giving a Limiting Instruction on the Invocation *Sua Sponte.***

**¶15**        Hand raises two other issues on appeal: (1) was it error to permit Crawford to invoke in front of the jury; and (2) was the court required to give a limiting instruction on Crawford's invocation to the jury. Hand, however, failed to object to Crawford's invocation and to request a limiting instruction at trial and has therefore waived both issues. Consequently, he is not entitled to relief absent fundamental, prejudicial error. *See State v. Escalante*, 245 Ariz. 135, 141–42, ¶¶ 17–21 (2018).

**¶16**        "A trial court's decision whether to allow a party to call a witness before the jury who will assert his Fifth Amendment privilege is reviewed for an abuse of discretion." *State v. Harrod*, 218 Ariz. 268, 275, ¶ 19 (2008). To determine whether it is proper to call the witness, the court must balance "the interest of the person calling the witness . . . [against] the possible prejudice resulting from the inferences the jury may draw from the witness' exercise of the privilege." *Corrales*, 138 Ariz. at 588. The court may

allow the witness to be called if "some valid purpose . . . will be served by so proceeding," such as to "provide the jury an explanation of the failure to call a witness who ordinarily would be expected to testify in order to prove the charge or establish the defense." *Id.* But pursuant to the two-prong test established by *Namet v. United States*, 373 U.S. 179 (1963), the court must refuse to allow the witness to invoke before the jury if the prosecution intends "to build its case out of inferences arising from the use of the privilege," or the invocation will add "critical weight to the [S]tate's case, thus prejudicing [the] defendant because of his inability to cross-examine." *Corrales*, 138 Ariz. at 589 (citing *Namet*, 373 U.S. at 186–87).

¶17 Hand has not demonstrated how the court's decision to allow Crawford to exercise her Fifth Amendment privilege before the jury was error. It is clear from the parties' discussions with the court that the State believed calling Crawford was necessary to present its full case. The questions the State asked of Crawford after calling her—whether she had spoken with the prosecutor before and whether she was a separately charged defendant for offenses arising out of the same events—also confirm this intent. Crawford was a central figure in the circumstances giving rise to the crimes for which Hand was charged. Indeed, Crawford's conduct was extensively discussed during other witnesses' testimony, and several recorded and written statements made by Crawford during and after the incident had been introduced into evidence via a stipulation between the parties.

¶18 Given these circumstances, it was reasonable to allow Crawford to invoke her Fifth Amendment privilege before the jury to guard against any adverse inference the jury might have drawn from the State's failure to call her. *See Corrales*, 138 Ariz. at 588; *see also Cota*, 102 Ariz. at 421 (proper for State to call co-defendant to invoke before the jury when not calling would "leave[] an obvious step out of its argument"). Whether the jury would have drawn an adverse inference from Crawford's absence or whether any such inference may have been more harmful to Hand's defense than to the State's case is irrelevant. And by failing to object to the State calling Crawford, Hand waived any claim that the court abused its discretion absent fundamental error, which we do not find here.

¶19 Moreover, the prosecutor's examination of Crawford was brief and utilized a set of non-prejudicial questions pre-approved by the court and Hand's counsel—a far cry from cases where violations of *Namet* have been found in the past. *See Corrales*, 138 Ariz. at 591 (prosecutor repeatedly asked witness who had invoked questions framed to "suggest [defendant's] involvement," including whether witness was involved in the

crimes with defendant*); *see also Douglas v. Alabama*, 380 U.S. 415, 416–17 (1965) (after witness's refusal to testify, prosecutor read witness's purported confession, pausing every few sentences to elicit again the witness's invocation); *United States v. King*, 461 F.2d 53, 56, 56 n.3 (8th Cir. 1972) (after witness invoked, the prosecutor repeatedly asked whether the witness was with defendant on the night of crime). Hand again points to the prosecutor's comments on Crawford's invocation during his closing argument as evidence that the State intended "to build its case out of inferences arising from the use of the privilege." *Corrales*, 138 Ariz. at 589. But as we stated above, two brief mentions of Crawford's invocation in a lengthy closing argument during a six-day trial, although improper, are not enough to conclude prosecutorial misconduct requiring reversal occurred.

**¶20**        Accordingly, we conclude the court's decision to allow Crawford to invoke before the jury, and the prosecutor's subsequent examination was not error, let alone fundamental, prejudicial error. And because Crawford's invocation itself did not cause fundamental error resulting in prejudice, the court also did not commit fundamental error by failing to give a limiting instruction *sua sponte* concerning that invocation. Although a limiting instruction may have been appropriate under these circumstances, "[a]bsent fundamental error, a defendant cannot complain if the court fails to sua sponte give limiting instructions." *State v. Ellison*, 213 Ariz. 116, 133, ¶ 61 (2006).

### CONCLUSION

**¶21**        We affirm Hand's convictions and resulting sentences.



AMY M. WOOD • Clerk of the Court
FILED:        RB

8