NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GREGORY JUSTIN HARDY, JR., *Appellant.*

No. 1 CA-CR 22-0298
FILED 5-23-2023

Appeal from the Superior Court in Yavapai County
No. P1300CR202001039
The Honorable Debra R. Phelan, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

The Zickerman Law Office PLLC, Flagstaff
By Adam Zickerman
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

---

**M O R S E**, Judge:

¶1　　　　Gregory Justin Hardy, Jr. appeals his convictions and sentences for one count of fraudulent schemes and artifices, one count of obstructing criminal investigations or prosecutions, and two counts of conspiracy. After searching the entire record, Hardy's defense counsel identified no arguable question of law that is not frivolous. In accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), defense counsel asks this Court to search the record for fundamental error. Hardy filed a supplemental brief in propria persona, which we have considered. Finding no reversible error, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2　　　　In 2019, the State charged Hardy with aggravated assault, burglary, robbery, disorderly conduct, and trespass ("2019 case"), and the court set trial for September 2020. While in jail awaiting trial, Hardy called his father several times and asked for his father's mailing address. Hardy used a different inmate's name and identification number for each of these calls. A detective monitored Hardy's outgoing phone calls.

¶3　　　　Hardy's father provided two mailing addresses, and Hardy sent a letter to each address using another inmate's name. The jail intercepted both letters after receiving alerts from the detective. In the first letter, Hardy asked his father to speak with the victims of the 2019 case to convince them to drop the charges against him and provided his father with the victims' address. In the second letter, Hardy asked his father to visit the victims' home and offer the victims his truck to drop the charges.

¶4　　　　Shortly after the jail intercepted the second letter, the victims informed the detective that they received a letter from one of Hardy's fellow inmates. In that letter, the inmate asked the victims to drop the charges against Hardy, explaining "[Hardy] is an innocent man." At that time, the jail also informed the detective that the inmate gave a corrections officer an additional letter and two notes. The detective interviewed the inmate, who

admitted to receiving the notes and the additional letter from Hardy. The notes instructed the inmate to send the victims a letter, and the additional letter instructed the inmate to contact Hardy's father and urged Hardy's father to offer the victims $500 or Hardy's truck to drop the charges.

¶5 Following the detective's investigation, the State charged Hardy with (1) fraudulent schemes and artifices, a class 2 felony, under A.R.S. § 13-2310(A); (2) obstructing criminal investigations or prosecutions, a class 5 felony, under A.R.S. § 13-2409; (3) conspiracy to commit obstructing criminal investigations or prosecutions, a class 5 felony, under A.R.S. §§ 13-1003 and 13-2409; and (4) conspiracy to commit tampering with a witness, a class 6 felony, under A.R.S. §§ 13-1003 and 13-2804. The superior court conducted a four-day jury trial, during which the victim, detective, and fellow inmate testified.

¶6 At trial, the detective testified about monitoring Hardy's outgoing phone calls and recognizing Hardy's voice in the calls. The detective also testified about alerting the jail to the letters addressed to Hardy's father and receiving information related to the 2019 case from the fellow inmate and the victims. The State introduced the two letters Hardy addressed to his father, the two notes and additional letter Hardy gave to the fellow inmate, and the letter the victims received from the fellow inmate. The victim testified to having received a letter from Hardy's fellow inmate, and in turn, that inmate testified to sending the victim a letter at Hardy's request. The court denied Hardy's motion under Arizona Rule of Criminal Procedure ("Rule") 20 and the jury convicted Hardy as charged.

¶7 During the aggravation phase of the trial, the jury found the State had proven the first aggravating factor (presence of an accomplice) for all counts. At sentencing, the court found that the State had proved three prior felony convictions and that Hardy was a category three repetitive offender. The court sentenced Hardy to presumptive terms of 15.75 years in prison for count one, five years in prison for counts two and three, and three-and-three-quarter years in prison for count four, all to run concurrently.

¶8 Hardy timely appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

¶9 Hardy raises several issues in his supplemental brief. "We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant." *State v. Harm*, 236

Ariz. 402, 404 n.2 (App. 2015) (quoting *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

## I.    Jury Selection and Instructions.

**¶10**    Hardy first argues the "trial was tainted" because the judge interfered with jury selection, claiming the trial judge "picked" the jury, controlled the jury, and did not let him use any peremptory challenges. As to peremptory challenges, our supreme court abolished them, effective January 1, 2022. *See* Ariz. R. Crim. P. 18.4 (2022). Because Hardy's trial began in March 2022, he was not entitled to any peremptory challenges.

**¶11**    As to Hardy's general claims about the judge's role in jury selection, we presume trial judges are free of bias and prejudice, and "a defendant must show by a preponderance of the evidence that the trial judge was, in fact, biased." *State v. Ramsey*, 211 Ariz. 529, 541, ¶ 38 (App. 2005). Hardy provides no examples nor citations to the record to rebut the presumption of judicial impartiality. Nor does Hardy argue bias or prejudice among the jurors. *See State v. Miller*, 178 Ariz. 555, 558 (1994) (noting a defendant may be entitled to a new trial for juror misconduct "if the defense shows actual prejudice *or if prejudice may be fairly presumed from the facts*"). Hardy has shown no reversible error.

**¶12**    Hardy also argues "the setting of the jury was completely on the judge's doing" and "when a juror requested to be released, he was threatened." Presumably, Hardy refers to deliberations during the aggravation phase when Juror Two asked to leave. In response, the court reminded Juror Two that he was there under a "jury summons" and expected to continue his service. The court also ensured that Juror Two did not disclose information regarding the jury's deliberations and directed Juror Two to rejoin the jury and submit any questions in writing once he returned to the deliberation room. *See* Ariz. R. Crim. P. 18.6(c), (f) (requiring trial courts to instruct jurors concerning their duties and to provide jurors with "additional instructions" as necessary). Without objection from defense counsel, the judge eventually excused Juror Two from the jury and replaced him with an alternate juror. But there is nothing in the record to suggest the court threatened Juror Two or any other juror, and Hardy provides no citations to the record to show otherwise.

**¶13**    Hardy further argues the jury instructions were inadequate because jurors were not "given instructions for a 'hung jury,' if it occurred." Though trial courts have broad discretion in assisting jurors at an impasse, prematurely giving an impasse instruction could constitute coercion and

would be improper if the jurors did not indicate they were deadlocked. *State v. Huerstel*, 206 Ariz. 93, 99, ¶ 17 (2003); *State v. Fernandez*, 216 Ariz. 545, 550, ¶ 13 (App. 2007); *see* Ariz. R. Crim. P. 22.4 & cmt. (explaining that "[i]f the jury advises the court that it has reached an impasse," the court may ask the jurors if the court or counsel can assist and provide appropriate instruction). The court did not provide impasse instructions in the final guilt-phase instructions or initial aggravation-phase instructions. We note, however, that the court gave an impasse instruction to the jury after it indicated it could not agree during aggravation-phase deliberations. *See State v. Andriano*, 215 Ariz. 497, 509, ¶ 56 (2007) (concluding the jurors had "affirmatively indicated" they were at an impasse when the jury asked "what would happen if the jury could not reach a verdict"), *abrogated on other grounds by State v. Ferrero*, 229 Ariz. 239 (2012). Hardy has not demonstrated any error in the jury instructions.

## II.     Sufficient Evidence.

**¶14**          Hardy also argues "the prosecutor made unproven statements about" him, claiming (1) "the jury did not hear the alleged phone calls, or see the alleged letters" and (2) "no handwriting expert was called to verify the writing" in the letters. "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (quoting *State v. Scott*, 113 Ariz. 423, 424-25 (1976)). The record shows the prosecution introduced several letters into evidence, and a handwriting expert was not required "to verify the writing" in those letters. *See* Ariz. R. Evid. 901(b)(2) (allowing non-experts to provide an opinion as to the genuineness of handwriting).

## III.     Ineffective Assistance of Counsel.

**¶15**          Hardy also claims he had an "ineffective attorney who gave faulty advice among many other problems" but indicates he will address "attorney issues" in a petition for post-conviction relief. We will not consider claims of ineffective assistance of counsel on direct appeal. *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002) (explaining such claims must be brought in a petition for post-conviction relief).

## IV.     Sixth Amendment Rights.

**¶16**          Hardy separately argues he "did not testify to defend himself" or present his own witnesses based on defense counsel's advice. A defendant has a Sixth Amendment right to present his own witnesses and to testify on his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 52 (1987); *State v.*

*Sanchez-Equihua*, 235 Ariz. 54, 57, ¶ 8 (App. 2014). Additionally, "a defendant must make his desire to testify known at trial and cannot allege this desire as an afterthought," and a trial court need not conduct "a *sua sponte* inquiry . . . regarding a defendant's right to testify." *State v. Gulbrandson*, 184 Ariz. 46, 65 (1995). The court complied with the Sixth Amendment by informing Hardy of his right to testify, which Hardy acknowledged; asking whether Hardy would call "any witnesses"; and even providing Hardy and defense counsel time to discuss Hardy's decision.

**¶17** Likewise, Hardy argues that because he was not allowed to testify at trial, "the judge could not use his testimony at sentencing." However, Hardy does not explain what he means by that statement. Hardy cites no authority prohibiting a sentencing court from considering a defendant's statement at sentencing, even though that defendant did not testify at trial. *See* Ariz. R. Crim. P. 26.10(c)(1) (requiring trial courts to "give the defendant an opportunity to address the court"). In fact, courts must allow defendants the opportunity "to make a mitigating statement for the judge to consider in determining the sentence." *State v. Hinchey*, 181 Ariz. 307, 313 (1995) (quoting *State v. McCall*, 160 Ariz. 119, 124 (1989)). And the record shows Hardy provided a statement at sentencing, which the court considered. Hardy has shown no error.

## V.    No Fundamental Error.

**¶18** In addition to evaluating the arguments raised in Hardy's supplemental brief, we have conducted an independent review of the record. Our review revealed no fundamental error. *See Leon*, 104 Ariz. at 300. All proceedings were conducted in compliance with the Rules, and the record reveals that Hardy was present at all critical stages of the proceedings and represented by counsel. *See* Ariz. R. Crim. P. 6.1, 19.2. The State presented sufficient evidence from which the jury could determine Hardy's guilt beyond a reasonable doubt. *See State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011). The jury was comprised of twelve members. *See* A.R.S. § 21-102(B). The superior court properly instructed the jury on the presumption of innocence, the burden of proof, and the elements of the charged offenses. The court received a presentence report. Ariz. R. Crim. P. 26.4. The court afforded Hardy an opportunity to speak at sentencing, imposed sentences within the statutory limits, and stated on the record the evidence and factors it considered in imposing the sentences. *See* A.R.S. §§ 13-701, -703; Ariz. R. Crim. P. 26.9-26.10.

## CONCLUSION

**¶19**        We affirm Hardy's convictions and sentences.  Upon the filing of this decision, defense counsel shall inform Hardy of the status of the appeal and of his future options.  Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review.  *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).  Hardy shall have 30 days from the date of this decision to proceed, if he desires, with a pro per motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:    AA