641 P.2d 857

**STATE of Arizona, Appellee,**

v.

**Loris Lee McVAY, Appellant.**

No. 4604-2.

Supreme Court of Arizona,
In Banc.

Feb. 4, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by James R. Hart II, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Justice.

On 2 March 1979, defendant Loris Lee McVay was sentenced to death for first degree murder. This court reversed the conviction on 4 December 1980. *State v. McVay*, 127 Ariz. 450, 622 P.2d 9 (1980). On remand, defendant pled guilty to first degree murder pursuant to a plea agreement. After denying defendant's subsequent motion to withdraw his guilty plea, the trial court sentenced defendant to life imprisonment on 10 April 1981. We have jurisdiction of this appeal pursuant to A.R.S. § 13–4031.

Defendant raises the following issues regarding his resentencing:

1. Was it improper to resentence defendant without aid of an updated presentence report?

2. Was the trial court's failure to advise defendant of his constitutional rights reversible error?

3. Was the failure of the trial court to inform defendant of the range of possible sentences reversible error?

4. Was there an adequate factual basis for the guilty plea?

The facts necessary to a determination of these issues are as follows. On 2 December 1977, defendant took a .22 caliber derringer belonging to a friend and went to the home of the victim, Thomas "Pappy" Pitts. He shot the victim in the head and fled on the victim's motorcycle. Defendant was apprehended and convicted of first degree murder in violation of former A.R.S. §§ 13–451 and 13–452 and sentenced to death under former A.R.S. §§ 13–453(A) and 13–454. While his appeal was pending, he was convicted of dangerous or deadly assault by prisoner in violation of A.R.S. § 13–1206 for which he was sentenced to

life imprisonment to be served consecutively to the sentence for which he was imprisoned as provided by statute, A.R.S. § 13–1206. We reversed defendant's murder conviction and granted him a new trial. See *State v. McVay,* supra. On 11 March 1981, prior to retrial, defendant entered a plea of guilty to first degree murder. His later motion to withdraw the plea was denied, and on 11 April 1981, defendant was sentenced to life imprisonment.

## PRESENTENCE REPORT

■ Defendant argues that the matter must be remanded for resentencing because he was resentenced without the benefit of an updated presentence report, in violation of Rule 26.4(a), Arizona Rules of Criminal Procedure, 17 A.R.S. The rule states:

"26.4. Pre-sentence report

"a. When Prepared. The court shall require a pre-sentence report in all cases in which it has *discretion* over the penalty to be imposed, * * *." (emphasis added)

We find no error for two reasons. First, a presentence report was not necessary as one had been prepared prior to the sentencing on 15 February 1979, following defendant's jury trial conviction. The report, which was some 16 pages long, thoroughly reviewed the crime and investigation, defendant's prior record, personal history, mental health, and the sentencing recommendations of various individuals. There are no indications of changes in circumstances which would require a new report to be prepared, *State v. Blier,* 113 Ariz. 501, 557 P.2d 1058 (1976), nor did the attorneys request one. See also Comment to Rule 26.4(a) which states that a presentence report is not required when:

"previous pre-sentence reports make a new one unnecessary, such as where the case is remanded for sentencing or new trial. * * * "

See also Comment to § 4.1(b), ABA Standards Relating to Sentencing Alternatives and Procedures (Approved Draft, 1968) at 204–207.

Second, Rule 26.4 does not require a presentence report where the court has no discretion in the sentence to be imposed. By the terms of the plea agreement, the defendant was to receive life imprisonment. The court's only exercise of discretion was to accept or reject the plea agreement. Although ordering an updated presentence report may have been the better practice, once the court accepted the plea agreement, an updated report was unnecessary. The sentence, as a result of the plea agreement, was life regardless of the existence and contents of a later presentence report. We find no error.

## FAILURE TO INFORM DEFENDANT OF HIS CONSTITUTIONAL RIGHTS

Defendant contends that his guilty plea was involuntary for two reasons. First, he contends that the trial court did not specifically inform him of his rights to a jury trial, to confront his accusers, and to not incriminate himself as required by *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

At the time of the plea, defendant was addressed by the court as to his understanding of the agreement and the plea he was entering. The following transpired:

"THE COURT: I've been handed by the prosecutor a document entitled plea agreement. I'm going to hand it to your attorney and have him show it to you, sir. And will you please acknowledge whether or not that is your signature and whether or not those are your initials in the boxed column on the left?

"DEFENDANT: Yes, it is my signature and my initials.

"THE COURT: Have you a copy of this agreement right in front of you?

"DEFENDANT: Yes, sir.

"THE COURT: Would you open it up, please, sir, and we'll review it together. Has your attorney explained this agreement to you?

"DEFENDANT: He has.

"THE COURT: Have you read this agreement?

"DEFENDANT: I have.

"THE COURT: Do you understand it?

"DEFENDANT: Yes, sir.

"THE COURT: Do you read and write the English language?

"DEFENDANT: I do.

"THE COURT: Do you see the paragraph that is printed in red?

"DEFENDANT: Yes, sir.

"THE COURT: Did you read that?

"DEFENDANT: Yes, sir.

"THE COURT: Do you understand that portion of the agreement sets forth your constitutional rights?

"DEFENDANT: Yes, sir.

"THE COURT: Do you understand that entering into this agreement, you waive and give up each of those rights?

"DEFENDANT: Yes, sir.

"THE COURT: Do you understand you will not have a jury trial and you will be incriminating yourself by pleading guilty, do you understand that?

"DEFENDANT: Yes, sir.

"THE COURT: Do you waive those rights at your own free will?

"DEFENDANT: I do.

"THE COURT: Has anybody threatened, coerced, or forced you to enter into this agreement?

"DEFENDANT: No, sir."

Rule 17.2, Arizona Rules of Criminal Procedure, 17 A.R.S., reads as follows:

"Rule 17.2 Duty of court to advise defendant of his rights and of the consequences of pleading guilty or no contest

"Before accepting a plea of guilty or no contest, the court shall address the defendant personally in open court, informing him of and determining that he understands the following:

a. The nature of the charge to which the plea is offered;

*   *   *   *   *   *

c. The constitutional rights which he foregoes by pleading guilty or no contest, including his right to counsel if he is not represented by counsel; and

d. His right to plead not guilty."

We agree with defendant that the trial court did not specifically inform the defendant of all the rights he was waiving at the time of the plea. We do not believe, however, that the plea was involuntary or unknowing. If it is apparent that the defendant did, in fact, know the rights he was waiving, then the failure of the trial court to strictly follow the mandates of Rules 17.2 and 17.3 does not prejudice the defendant. *State v. Darling*, 109 Ariz. 148, 506 P.2d 1042 (1973). We have stated:

"* * * We have held, however, that if it can be ascertained from an examination of the extended record that the defendant was otherwise aware of the information the trial judge is required to but failed to advise him of, the judge's error shall be regarded as technical rather than reversible. * * *" *State v. Levario*, 118 Ariz. 426, 427, 577 P.2d 712, 713 (1978).

In the instant case, defendant signed an agreement which waived basic constitutional rights as set forth in Rule 17.2. He acknowledged in open court that they had been explained to him by his attorney, that he understood them, and that he had voluntarily signed the waiver. The judge emphasized to him that he would not have a jury trial and that he would be incriminating himself by pleading guilty. Furthermore, it is evident that the defendant was aware of his right to plead not guilty, his right to counsel, and his right to confront his accusers, since he had already been to trial on this matter. *State v. Lopez*, 27 Ariz.App. 626, 557 P.2d 558 (1976). When it may be ascertained from an expanded record that the defendant was aware of his rights, the trial judge's failure to recite the litany of his waiver is not reversible error. *State v. Darling*, supra; *State v. Levario*, supra.

## RANGE OF SENTENCING

Defendant also urges that his plea was involuntary because the trial judge failed to advise him of the range of possible sentences. Rule 17.2(b), Arizona Rules of Criminal Procedure, 17 A.R.S. Rule 17.2 states in part:

"Before accepting a plea of guilty or no contest, the court shall address the defendant personally in open court, informing him of and determining that he understands the following:

\*   \*   \*   \*   \*   \*

"b. The nature and range of possible sentence for the offense to which the plea is offered, including any special conditions regarding sentence, parole, or commutation imposed by statute;"

In the instant case, the trial court sentenced defendant

"for a period of his natural life with no possibility of parole until the Defendant has served a sentence of twenty-five (25) calendar years, to date from 2–15–78. Credit has been given for the time already served."

Defendant's previous life sentence for the assault committed in prison was ordered to run consecutively to his sentence for the murder of "Pappy" Pitts. He now contends that the court's failure to advise him of the possibility of consecutive sentences violated Rule 17.2(b) and rendered his plea involuntary. *Boykin v. Alabama*, supra. We do not agree.

We have held that the possibility of consecutive sentences is not a "special condition regarding sentence" of which Rule 17.2 requires the judge to inform the defendant. *State v. Gordon*, 125 Ariz. 425, 610 P.2d 59 (1980). We find no error.

## FACTUAL BASIS FOR GUILTY PLEA

■ Defendant contends that there is no evidence to show that he acted with malice and therefore there was no factual basis for his plea as required by Rules 17.3 and 26.2(c), Arizona Rules of Criminal Procedure, 17 A.R.S. The rules require that before a plea of guilty or no contest may be accepted, the court shall determine that there is a factual basis for the plea. The court must satisfy itself of the factual basis to support each of the elements of the crime. *State v. Carr*, 112 Ariz. 453, 543 P.2d 441 (1975). The factual basis may be found in reports of preliminary hearings, the defendant's admissions, and other sources. *State v. Varela*, 120 Ariz. 596, 587 P.2d 1173 (1978). Although the facts need not show guilt beyond a reasonable doubt, there must be strong evidence of actual guilt. *State v. Varela*, supra.

■ At the hearing on the motion to withdraw the guilty plea, the following exchange occurred:

"THE COURT: And did the killing take place?

"THE DEFENDANT: Yes, sir.

"THE COURT: And did he ask you to come in?

"THE DEFENDANT: Yes, sir.

"THE COURT: And did you shoot and kill him?

"THE DEFENDANT: Yes, sir.

"THE COURT: Where did you shoot him?

"THE DEFENDANT: Between the eyes. Aside the head.

"THE COURT: Did you do it on purpose?

"THE DEFENDANT: Yes, sir.

"THE COURT: Did you intend to kill him?

"THE DEFENDANT: Yes, sir.

"THE COURT: When you aimed the gun at him and pulled the trigger, did you know it was loaded?

"THE DEFENDANT: Yes.

"THE COURT: Did you shoot him between the eyes because you aimed between the eyes?

"THE DEFENDANT: Yes, sir.

"THE COURT: Was he undressing at the time this happened?

"THE DEFENDANT: No, sir.

"THE COURT: Was he already undressed?

"THE DEFENDANT: No.

"THE COURT: After you shot him, did he collapse and fall to the floor dead right then or what?

"THE DEFENDANT: He was already seated. He was sitting down.

"THE COURT: Was it obvious to you that he was dead after you shot him?

"THE DEFENDANT: Not after the first time he was shot, no.

"THE COURT: How many times did you shoot him?

"THE DEFENDANT: Twice.

"THE COURT: In the head both times?

"THE DEFENDANT: Yes, sir."

The defendant admitted that he fired the shots which killed the victim and that he intended to do so. This intent supports a finding of malice. Former A.R.S. § 13–451; *State v. Smith*, 123 Ariz. 231, 599 P.2d 187 (1979). Defendant also admitted at the hearing on change of plea that he had taken a pistol to the victim's home on the night of the murder. These statements support the trial court's acceptance of defendant's plea of guilty of first degree murder. A.R.S. §§ 13–451, 13–452. We find that there was an adequate factual basis from which the trial court could accept a plea of guilty to first degree murder.

Judgment affirmed.

HOLOHAN, C. J., GORDON, V. C. J., and HAYS and FELDMAN, JJ., concur.