IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

STEVEN RICARDO VALLEJO,
*Appellant*.

No. 2 CA-CR 2024-0165
Filed June 18, 2025

---

Appeal from the Superior Court in Pima County
No. CR20204648002
The Honorable J. Alan Goodwin, Judge

**AFFIRMED**

---

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Emily Tyson-Jorgenson, Assistant Attorney General, Tucson
*Counsel for Appellee*

Apfel Law Group, Phoenix
By Seth Apfel
*Counsel for Appellant*

---

## OPINION

Judge Sklar authored the opinion of the Court, in which Judge Vásquez concurred and Presiding Judge Eckerstrom dissented.

---

S K L A R, Judge:

¶1          This case requires us to consider whether the trial court abused its discretion in concluding that an in-custody defendant had voluntarily absented himself from trial.  The defendant, Steven Vallejo, was convicted of second-degree murder after missing one full trial day and part of another because of disputes with his counsel about the civilian clothing provided for him.  The court found that Vallejo's absence was voluntary, and it proceeded with trial in his absence.  We conclude that the court did not abuse its discretion in doing so, nor did it abuse its discretion in denying a trial continuance to address the issue.  We also reject Vallejo's argument that there was insufficient evidence to convict him.  We therefore affirm his conviction and sentence.

## BACKGROUND

¶2          A grand jury indicted Vallejo on six felonies for offenses that occurred over two days in November 2020.  The state alleged that Vallejo had murdered A.L. during a robbery.  It charged him with aggravated robbery, armed robbery, and first-degree murder.  At the conclusion of a six-day trial, the jury convicted him of second-degree murder—the lesser-included offense for first-degree murder—but did not reach a unanimous verdict on the robbery charges.

¶3          The jury also did not reach a verdict on the three other counts, which stemmed from a separate altercation six days before the murder.  The trial court dismissed the nonunanimous counts without prejudice.  For the murder, it sentenced Vallejo to twenty-one years of incarceration.  This appeal followed.

## VALLEJO'S ABSENCES

¶4          Vallejo first argues the trial court erred by determining that he had voluntarily absented himself from portions of the second and third

days of trial. His absences related to his rejection of the clothes that were provided for him to wear during trial.

¶5 A defendant has the right to be present at his own trial. U.S. Const. amend. VI; Ariz. Const. art. II, § 24. However, a defendant may voluntarily absent himself, which allows the proceeding to continue in his absence. *See State v. Reed*, 196 Ariz. 37, ¶ 3 (App. 1999). Under Rule 9.1 of the Arizona Rules of Criminal Procedure, a court "may infer that a defendant's absence is voluntary if the defendant had actual notice of the date and time of the proceeding, notice of the right to be present, and notice that the proceeding would go forward in the defendant's absence." That inference, however, is rebuttable where "subsequently discovered facts show that a defendant's absence was not voluntary." *State v. Sainz*, 186 Ariz. 470, 473 (App. 1996).

¶6 We review a trial court's determination on the voluntariness of a defendant's absence for an abuse of discretion. *Reed*, 196 Ariz. 37, ¶ 2. Vallejo raises separate arguments concerning his absences on the two relevant days, so we address those days separately.

## I. Vallejo voluntarily absented himself from the second day of trial.

¶7 The trial's second day was the first on which evidence was presented. During a discussion with his counsel and the trial judge—and outside the jury's presence—Vallejo told the court that he would absent himself because he believed the clothing provided by his counsel looked "scrubby." He instead wanted to wear a suit provided by a friend. The friend, however, had brought the clothing to court less than an hour before trial, and security protocols required that it first be searched for contraband at the jail a few miles away. That screening could not be completed before trial.

¶8 Vallejo and the trial court then had the following colloquy:

> The court: All right. So . . . are you going to be present with [defense counsel] or are you going to voluntarily absent yourself from the trial today?
>
> The defendant: Today I'm not going to be here.
>
> The court: All right. I find that Mr. Vallejo is knowingly, intelligently, and voluntarily

absenting himself from today's proceedings. So
are you sure? You're sure?

The defendant: Yeah.

¶9        In general, a criminal defendant who is in custody has limited control over clothing delivery, and a court can find his absence involuntary when he is not provided with appropriate attire. For example, in *State v. Garcia-Contreras*, our supreme court concluded that a defendant had not voluntarily waived the right to be present when no civilian clothes were available and the only option was jail garb. 191 Ariz. 144, ¶¶ 4-6, 14 (1998).

¶10       Here, by contrast, Vallejo was not forced to wear jail garb. Appropriate attire was available. Vallejo simply refused to wear the "scrubby" suit his attorney had provided for him. He has cited no legal authority suggesting that a defendant's absence is involuntary because he would prefer to wear something different from the civilian clothing provided to him. *Cf. State v. Howland*, 134 Ariz. 541, 548 (App. 1982) ("Appellant cannot walk out during the trial, inform his counsel that he will not be present, and then claim that his constitutional right to be present has been violated.").

¶11       In addition, the colloquy recounted above satisfied the three requirements of Rule 9.1. It occurred just before the jury entered the courtroom on a trial day, and it notified Vallejo that the trial would proceed without him. It therefore created an inference of voluntariness. Vallejo has presented no evidence to rebut that inference. The trial court therefore did not abuse its discretion in concluding that his absence on the second day of trial was voluntary. *See Reed*, 196 Ariz. 37, ¶ 2.

## II.  Vallejo voluntarily absented himself on the third day of trial.

¶12       On the third day of trial, Vallejo was absent for only the morning session. The voluntariness of Vallejo's absence during that session presents a closer question than his absence the prior day.

### A.  Factual background

¶13       Before trial began on day three, judicial security informed the trial court off the record that Vallejo was refusing to wear the pants provided by jail staff. The court stated, presumably based on its off-the-record discussion, that Vallejo had ripped a pair of pants and refused to wear replacement pants. Vallejo's counsel requested "a break to

go speak with him" and, if that was not possible, a continuance to the afternoon so that counsel could speak with Vallejo. Considering the "extensive record" made the day prior, the court found that Vallejo's continued absence was voluntary.

¶14 Vallejo returned for the afternoon session. While he was present, his counsel informed the trial court that Vallejo had "fully intended to participate" in the morning session. Counsel explained that jail staff, however, had brought Vallejo clothing he was not expecting, leading him to believe that his counsel was "railroading" him. The prior day, Vallejo and his counsel had engaged in a lengthy, on-the-record argument about clothing. Counsel further explained that, after Vallejo had learned he was not being railroaded, he became "willing to participate" in the afternoon session. Counsel described the situation as a "very big misunderstanding." At no point during counsel's explanation did Vallejo disagree or otherwise speak up.

### B. The record supports the trial court making an inference of voluntariness under Rule 9.1

¶15 On appeal, Vallejo argues that the trial court erred by failing to question him or security staff before the morning session to determine whether his absence was voluntary. But Rule 9.1 did not require the court to do so. *See State v. Pena*, 25 Ariz. App. 80, 81 (1975) ("[T]here is no requirement that the court make a specific determination prior to beginning a proceeding in defendant's absence that his absence is voluntary especially where the record is clear that Rule 9.1 is applicable.").

¶16 Rather, Rule 9.1 requires only that the defendant have "actual notice of the date and time of the proceeding, notice of the right to be present, and notice that the proceeding would go forward in the defendant's absence." *See also State ex rel. Romley v. Superior Court*, 183 Ariz. 139, 144-45 (App. 1995) (affirming finding of voluntary absence where defendant, who had escaped from confinement, had no notice of continued trial date).

¶17 Because no colloquy occurred on the third day, the trial court did not expressly advise Vallejo again that the trial could proceed in his absence. And as Vallejo points out, during the prior day's colloquy, both he and the court had used the word "today." This suggests that both Vallejo's decision to absent himself and the court's finding that his doing so was voluntary should have been revisited the next day. Our dissenting

colleague relies heavily on this view, especially given the "dynamic" nature of Vallejo's concerns about his clothing.

**¶18**        But the broader record establishes that Vallejo was repeatedly admonished about the consequences of failing to appear for trial. As early as his arraignment, he was "advised that his[] failure to appear for trial could result in the trial proceeding in his[] absence." An order establishing his pretrial release conditions reiterated this admonition. The court provided similar warnings on at least three other occasions. Thus, Vallejo had repeatedly received notice that the trial could proceed without him. And given that Vallejo was obviously aware of the trial date and time, as well as his right to be present, the record establishes that all three requirements of Rule 9.1 were met. Thus, the trial court was entitled to infer that Vallejo's absence was voluntary, and it did not abuse its discretion in doing so.

### C. Vallejo has not overcome the inference of voluntariness

**¶19**        Vallejo argues that, based on the facts, he has rebutted the inference of voluntariness. In reviewing this issue, we are not limited to the information available to the court when it found Vallejo's absence to be voluntary. *See Sainz*, 186 Ariz. at 473-74. Rather, we may also consider the information the court learned from Vallejo's counsel after Vallejo returned. *See id.*; *State v. McVay*, 131 Ariz. 369, 372 (1982) ("When it may be ascertained from an expanded record that the defendant was aware of his rights, the trial judge's failure to recite the litany of his waiver is not reversible error.").

**¶20**        Here, the record reflects that Vallejo chose not to appear because he was surprised that the clothes available to him were not those that he had expected. And while the pants that were initially provided had ripped, nothing in the record suggests that Vallejo was forced to choose between attending trial in ripped pants or not attending at all. Other pants were made available.

**¶21**        Vallejo's silence during his counsel's explanation is revealing. As the dissent notes, Vallejo had not hesitated to speak up on the prior day when he disagreed with his counsel's advice about his clothing. In not doing so on the third day, he could reasonably have been understood as agreeing with his counsel's explanation. Taken together, these facts support a finding that Vallejo has not rebutted the inference of voluntariness under Rule 9.1.

¶22 Our dissenting colleague also emphasizes the importance of a defendant's right to be present at trial, as well as the trial court's lack of "critical inquiry" about the reasons for Vallejo's absence. We agree that right is important. We also agree that, given Vallejo's in-custody status, the court had more immediate options for determining the voluntariness of his absence than if he had been out of custody. As the dissent notes, these options included questioning judicial security on the record, bringing Vallejo into the courtroom, or allowing a recess.

¶23 But given the evidence available about the reasons for Vallejo's absence, the court could reasonably conclude his absence was voluntary without taking those steps. And we reject any suggestion that the standard for determining voluntariness differs depending on whether the defendant is in custody or out of custody during trial. The standard remains the same, though the court has more tools available when the defendant is in custody. In addition, while the dissent may be correct that the state's "neglect in failing to provide Vallejo his chosen clothes may have played a pivotal role in Vallejo's refusal to attend that session," we do not agree that the voluntariness standard required the court to take the steps that our dissenting colleague concludes it should have.

¶24 Both Vallejo and the dissent rely on *State v. Bishop*, 139 Ariz. 567, 569-70 (1984). There, our supreme court concluded that a trial court had abused its discretion in finding that a defendant was voluntarily absent when the record was silent on the reasons for that absence. *Id.* But *Bishop* is inapposite. Unlike in *Bishop*, the record in this case is clear regarding the reasons for Vallejo's absence. No further inquiry was necessary.

### D. The trial court did not abuse its discretion by denying Vallejo's request for a recess or continuance

¶25 Vallejo also argues that the trial court erred by denying his request for a recess or continuance during the morning session to resolve the clothing issue. Courts have extensive discretion—and a duty—to ensure trials proceed in an orderly fashion. *State v. Wassenaar*, 215 Ariz. 565, ¶ 28 (App. 2007); *see also* Ariz. R. Evid. 611(a)(2). Based on the totality of the circumstances, including the colloquy on the prior day and the information available to it at the time, we cannot say the court abused its discretion when it denied the continuance. *See Findlay v. Lewis*, 172 Ariz. 343, 346 (1992). And in retrospect, because the court did not err in finding Vallejo's absence voluntary, any error in denying the continuance was harmless.

**SUFFICIENCY OF THE EVIDENCE**

**¶26**      Vallejo also argues the state presented insufficient evidence to support a conviction for second-degree murder. As it is a question of law, we review the sufficiency of evidence de novo. *State v. Chandler*, 244 Ariz. 336, ¶ 3 (App. 2017). A judgment of acquittal is required if no substantial evidence supports a conviction. *See* Ariz. R. Crim. P. 20. "In determining whether substantial evidence exists, we view the facts and all reasonable inferences therefrom in the light most favorable to sustaining the jury's verdicts." *State v. Gray*, 231 Ariz. 374, ¶ 3 (App. 2013). Vallejo attacks each of what he describes as the only three pieces of evidence tying him to the murder: (1) testimony from a witness, Alejandro R.; (2) a Snapchat conversation retrieved from the victim's cell phone; and (3) location evidence regarding Vallejo's cell phone.

**¶27**      The state's primary witness was Alejandro R., the driver of the car from which Vallejo fired the shots that killed A.L. Vallejo argues that Alejandro R.'s testimony was "effectively purchased by the state with an incredibly generous plea" deal. He also argues that parts of Alejandro R.'s testimony conflict with the forensic evidence and the logical behavior of someone who had just witnessed a murder.

**¶28**      Vallejo cross-examined Alejandro R. on these and other asserted inconsistencies. He also cross-examined Alejandro R. about the plea arrangement, which Vallejo does not persuasively argue was improper. *See State v. Rivera*, 210 Ariz. 188, ¶¶ 2, 11, 18 (2005) (former codefendants may truthfully testify for state as part of plea arrangement). The jury found Vallejo guilty anyway. Thus, Vallejo's argument is essentially a request that we second-guess the jury's assessment of Alejandro R.'s credibility, which we may not do. *See State v. Hall*, 204 Ariz. 442, ¶ 55 (2003) (jury weighs witness credibility). Indeed, the jury could have rationally concluded that, although Alejandro R. may have testified inaccurately about some details, he accurately testified that Vallejo was the shooter.

**¶29**      Vallejo next focuses on the Snapchat conversations downloaded from the victim's phone. Most notably, A.L.'s murder was reported by a 9-1-1 caller nine minutes after a Snapchat user named Ricky Ricardo had informed A.L. that he was five to ten minutes away. Vallejo contends the link between himself and the Snapchat messages "is questionable at best." But sufficient evidence shows that Vallejo, whose middle name is Ricardo, operated the Ricky Ricardo Snapchat account. The account featured videos of a male with Vallejo's left forearm tattoo.

Alejandro R. also testified that Vallejo owned the account. Thus, the jury could reasonably have concluded that the Snapchat evidence supported Vallejo's guilt.

¶30 Finally, Vallejo points to his cell phone location history, which he claims merely puts him near the crime scene rather than at A.L.'s house. A detective testified that the cell phone tower's "bubble map" showed that, at the time of the murder, Vallejo's phone was located within a portion of the city large enough to encompass A.L.'s residence. The jury necessarily weighed the evidence and concluded that Vallejo was present at the murder scene. We will not second-guess its deliberations. *See State v. Hansen*, 237 Ariz. 61, ¶ 20 (App. 2015) (we generally do not inquire into jury's deliberative process). In sum, when viewing all the evidence and inferences in favor of sustaining the jury's verdict, we conclude that sufficient evidence supported Vallejo's conviction for second-degree murder in violation of A.R.S. § 13-1104. *See Gray*, 231 Ariz. 374, ¶ 3.

## DISPOSITION

¶31 We affirm Vallejo's conviction and sentence.

E C K E R S T R O M, Presiding Judge, dissenting:

¶32 The right of the accused to be present in the courtroom for every stage of his trial is "[o]ne of the most basic" procedural rights guaranteed by the Confrontation Clause of the Sixth Amendment. *Illinois v. Allen*, 397 U.S. 337, 338 (1970). That right is also secured by the Arizona Constitution. Ariz. Const. art. II, § 24 (accused shall have right "to appear and defend in person").

¶33 It is not a trivial right. Without a defendant's presence, a criminal trial cannot serve as the balanced and comprehensive fact-finding process that our founders contemplated. An absent defendant cannot testify on his own behalf. *See id.* ("accused shall have the right . . . to testify in his own behalf"); *Rock v. Arkansas*, 483 U.S. 44, 51 (1987) ("The right to testify on one's own behalf . . . is one of the rights that 'are essential to due process of law in a fair adversary process.'" (quoting *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975))). An absent defendant cannot confront his accusers, a right that includes the entitlement to effectively cross-examine adverse witnesses. *See* U.S. Const. amend. VI (providing express constitutional right to confront accusers); *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987) (cross-examination is principal means by which believability of witness testimony tested); Ariz. Const. art. II, § 24 (accused shall have right

"to meet the witnesses against him face to face"). Nor can an absent defendant assist his attorney in marshaling detailed information about his case—information often uniquely in his possession—to challenge the accuracy or credibility of the state's witnesses. *See, e.g.*, *Bishop*, 139 Ariz. at 571 (rejecting harmlessness argument because absent defendant could not assist in identifying inaccuracies in witness testimony).

¶34 Accordingly, our jurisprudence and pertinent rules instruct that trial courts must be vigilant, not passive, in facilitating a defendant's exercise of that right. Our supreme court has emphasized that "proceedings in criminal cases held outside the defendant's presence . . . should be conducted, if at all, only for valid reasons and only where the record clearly shows that the defendant has waived his right to be present." *State v. McCrimmon*, 187 Ariz. 169, 171 (1996). Notably, when individual defendants have forfeited their presence by disruptive behavior in court, Rule 9.2(a), Ariz. R. Crim. P., requires our trial courts to inform them that they can return upon a promise of future orderly conduct. During the remainder of the trial, that rule further instructs our courts to periodically inquire whether the absent defendant "wishes to reacquire the right to be present." Ariz. R. Crim. P. 9.2(b). Thus, our trial courts are required to actively facilitate the presence of defendants during trial—even for those defendants who have previously disrespected those proceedings.

¶35 Rule 9.1 permits a trial court to presume voluntary waiver from a defendant's unexplained absence if the defendant had actual notice of the trial date, of the right to be present, and of the risk that the trial could proceed in his absence. Ariz. R. Crim. P. 9.1. That presumption remains a practical necessity when an out-of-custody and unavailable defendant fails to appear without explanation. But, our supreme court has never read that provision—a practical necessity when an out-of-custody defendant fails to appear without explanation—to relieve our courts of the duty to conduct more comprehensive fact-finding to determine the voluntariness of an *in-custody* defendant's refusal to attend trial.

¶36 In that context, our supreme court has required more than the passive acceptance of relayed assertions from jail guards that a defendant has declined to attend. *See Bishop*, 139 Ariz. at 570-71. In *Bishop*, the court emphasized, "The finding of voluntary absence, and, therefore, the existence of a waiver of the right to be present, is basically a question of fact." *Id.* at 569 (quoting *Brewer v. Raines*, 670 F.2d 117, 120 (9th Cir. 1982)). And, while acknowledging the presumption allowed by Rule 9.1, the supreme court found an inadequate factual inquiry when the trial court

had: (1) failed to question either the jail guards or Bishop about the details of their conversations regarding Bishop's absence; and (2) failed to make both available for defense counsel to question on the topic. *Bishop*, 139 Ariz. at 570; *see also Sainz*, 186 Ariz. at 472-73 (Rule 9.1 constitutional only if defendant eventually afforded hearing "to determine whether his absence was, in fact, voluntary").

¶37 In sum, these authorities direct our trial courts to proactively foster a criminal defendant's presence at trial and, to the extent feasible, generate an adequate record to determine whether an apparent waiver has arisen from a knowing, voluntary, and intelligent decision. And, when an in-custody defendant like Mr. Vallejo, subject to prompt transport on the court's order,[1] has apparently declined to attend, the court should address the defendant directly to determine his or her reasons for doing so. *See Bishop*, 139 Ariz. at 570-71. I would conclude that the trial court erred because, when informed by judicial security that Vallejo was refusing to attend the third day of trial,[2] the court failed to do any of these things.

¶38 As the majority correctly reasons, the trial court was entitled to assess Mr. Vallejo's apparent refusal to attend on the third day in the context of the more comprehensive record it had developed on the morning of the second day. *See McVay*, 131 Ariz. at 372. From that hearing, which included a colloquy with Vallejo and lengthy interjections by defense counsel, the court was entitled to conclude that Vallejo was fully aware of both his right to attend trial and the strategic importance of doing so.

¶39 But that same record should have cued the trial court that it faced a dynamic, rather than static, situation in assessing whether Mr. Vallejo's third day refusal was equally voluntary. *Cf.* Ariz. R. Crim. P. 9.2 (requiring persistent monitoring throughout trial of disruptive defendant's desire to absent himself). On the second day of trial, Vallejo firmly asserted his reasonable concern that, because the jurors would focus

---

[1]The record reflects that the trial court knew Vallejo was "in the building," readily available to be brought to the courtroom during the entire morning session.

[2]After an extensive colloquy with, and between, the defendant and defense counsel, the trial court properly found that Vallejo had knowingly, voluntarily, and intelligently waived his right to attendance on the second day of trial. I fully concur with the majority's reasoning as to that claim of error.

their attention on him during the trial, appearing in "presentable" clothes might be important to their impression of him.[3] The record also reflected that a friend of Vallejo's had provided presentable clothing to defense counsel before trial on the second day but was apparently unaware that the jail needed more time to inspect the clothes before he would be allowed to wear them. In open court, defense counsel eventually promised Vallejo on the record that he would be able to wear those clothes for the third day of trial. In this context, when Vallejo was again required to wear ill-fitting clothes on the third day, Vallejo might have reasonably concluded that his chosen attire would never be provided—a markedly different scenario, presenting different strategic considerations, than on day two.

¶40    The interaction between Mr. Vallejo and his counsel at the beginning of the second day should have cued the trial court to another dynamic potentially affecting Vallejo's decision not to attend the following day. In particular, defense counsel displayed an extraordinary willingness to debate trial strategy, and belittle his own client's judgment, while addressing the court regarding Vallejo's potential absence. This caused an obvious deterioration of the attorney-client relationship in open court.[4]

¶41    In sum, by the third day of trial, the trial court knew Mr. Vallejo believed that appearing in proper clothes would matter to the

---

[3]The United States Supreme Court has acknowledged the dignitary interests of the accused in their attire during trial. *See Estelle v. Williams*, 425 U.S. 501, 518 (1976) (Brennan, J., dissenting on other grounds) (recognizing the importance of courtroom attire in fostering "the respect and dignity accorded other participants in a trial").

[4]As the trial court attempted to clarify whether Vallejo's waiver was voluntary, defense counsel trivialized Vallejo's concern about the clothes and asserted that a jury would perceive Vallejo as both guilty and "crazy" for exercising his right of absence in lieu of appearing shabbily. Vallejo firmly disagreed with his counsel on those points. Defense counsel then warned that the prosecutor might strategically capitalize on Vallejo's absence by calling the primary cooperating witness against him during his absence. Apparently concerned that the warning had been offered in the presence of the prosecutor, Vallejo responded with exasperation: "What a way to help him." Defense counsel thereafter suggested that it would be better for Vallejo to appear in shackles and jail clothes than to absent himself. Vallejo expressed surprise and dismay that his counsel would suggest such an option.

jury and that he might again forfeit his right to appear before appearing in shabby clothes. The court knew that Vallejo, through a friend, had produced presentable clothes a day earlier and that defense counsel had promised Vallejo he could wear those clothes for the third day of trial. And, the court knew that Vallejo's trust in his counsel had been strained by his counsel's handling of the clothing issue. Finally, the court knew that the state's most important witness for the defendant to confront would be testifying on the morning of the third day—something that had not occurred on the second day.

¶42 These facts should have compelled further inquiry when the trial court discovered on the morning of the third day that: (1) Mr. Vallejo was refusing to wear replacement pants the jail had provided after he made an initial effort to wear a first pair of pants provided by the jail—suggesting an initial desire to appear; (2) the first pair had ripped when Vallejo sat down; and (3) the court's sole source of information about the situation was judicial security, not Vallejo himself. Rather than making a record adequate to clarify the circumstances preventing Vallejo's attendance, or exploring the voluntariness of any waiver in light of those circumstances, the trial court denied defense counsel's request for a recess to speak with Vallejo. Nor did the court bring Vallejo into the courtroom to acquire his version of the morning's events, to confirm Vallejo's apparent decision to absent himself, or to explore its voluntariness.

¶43 Instead, the trial court accepted, without critical inquiry, judicial security's out-of-court, off-the-record assertions about Mr. Vallejo's decision and the circumstances surrounding it. *See Bishop*, 139 Ariz. at 570 ("This court has recognized the difficulties presented by relying on hearsay to find a waiver of constitutional rights."). The court apparently accepted those assertions without inquiring why the jail had not provided Vallejo with the clothes his friend had brought the prior day. This left unexplored whether the state—specifically, the jail—shared any responsibility for creating the circumstances surrounding Vallejo's non-attendance, a factor plainly relevant to any finding of voluntariness. *See Moran v. Burbine*, 475 U.S. 412, 421-22 (1986) (voluntariness of constitutional waiver a distinct inquiry from whether waiver is knowing and intelligent and involves consideration of any coercive pressures exerted by state); *see also Garcia-Contreras*, 191 Ariz. 144, ¶ 14 ("[W]hile we agree that it is a defendant's responsibility to ensure the availability of civilian clothing at trial, we reject the idea that every failure in this regard can sensibly be characterized as 'voluntary.'").

¶44      The majority observes that we may consider information presented later in the trial to assess the voluntariness of Mr. Vallejo's waiver on the morning of the third day of trial. *See Sainz*, 186 Ariz. at 473-74. But that subsequent record does not demonstrate that Vallejo's waiver was voluntary. To the contrary, it suggests that the state's apparent administrative neglect in failing to provide Vallejo his chosen clothes may have played a pivotal role in Vallejo's refusal to attend that session. Whatever the cause, the jail's failure to provide Vallejo's chosen clothes: (1) recreated the original cause of Vallejo's non-attendance on day two; and (2) undermined Vallejo's confidence that he was receiving either a fair trial or effective assistance from his defense counsel.[5]

¶45      For the foregoing reasons, the trial court erred in failing to establish an adequate record that Mr. Vallejo's refusal to attend the morning session of the third day of trial was the product of a voluntary decision. For the same reasons, the court erred in denying defense counsel's request for a recess to confer with Vallejo about the circumstances of that refusal.

¶46      Those errors entitle Mr. Vallejo to a new trial. Assuming a defendant's absence from important trial testimony is subject to harmless error review at all,[6] that absence was not harmless here. *See Garcia-Contreras*, 191 Ariz. 144, ¶¶ 17-22 (importance of proceeding from which defendant excluded relevant in assessing whether involuntary absence constituted harmless error or structural error). Rather, Vallejo's absence forfeited his ability to confront pivotal testimony provided by the state's primary witness, Alejandro R. Prosecuted as a co-conspirator to the

---

[5]According to defense counsel's avowal at the outset of the afternoon session, the jail's failure to provide the proper clothes caused Vallejo to believe that defense counsel had breached his promise to timely deliver those clothes. This, in turn, caused Vallejo to believe that his counsel had lied to and was "railroading" him. Defense counsel asserted he possessed the receipt from the jail demonstrating that he had delivered Vallejo's preferred clothes the prior afternoon.

[6]The accused's right to presence at his own trial is secured by the text of the Sixth Amendment entitling a defendant "to be confronted with the witnesses against him." U.S. Const. amend. VI. For this reason, the defendant's right to be present for all phases of trial must be at its apex during the testimony of a defendant's primary accuser. This would suggest that, under the standard set forth in *Garcia-Contreras*, the "presence error" here would be structural. 191 Ariz. 144, ¶¶ 16-22.

shooting, and testifying in exchange for a substantial reduction in his own sentencing exposure, only Alejandro could testify that Vallejo, rather than he, had fired the shots that killed the victim. The case thus turned in large part on the credibility of Alejandro as to events only Vallejo and Alejandro had witnessed first-hand. Any line of questioning enabled by Vallejo's superior knowledge of the events could have changed the jury's assessment of Alejandro's credibility. Therefore, I cannot conclude that Vallejo's absence from the courtroom during substantial parts of that testimony, including the entirety of direct examination, was harmless beyond a reasonable doubt. *See State v. Strong*, 258 Ariz. 184, ¶ 45 (2024) (harmless error review places burden on state to prove beyond reasonable doubt that error did not contribute to or affect verdict or sentence).